STATE ex rel. WALLACE B. DOUGLAS and Another v. WILLIAM P. WESTFALL.[1]

February 14, 1902.

Nos. 12,906—(217).

### Constitution—Laws 1901, c. 237.

Laws 1901, c. 237, providing for the Torrens system of registering land titles, is not unconstitutional in that it is special legislation; nor in that it deprives the owner of his interest in land without due process of law; nor in that it violates article 3 of the constitution, vesting the powers of government in three distinct departments; nor in that examiners of title provided for by the act are appointed by the court, and not elected as county officers are required to be by Const. art. 11, § 4.

Writ of quo warranto issued from the supreme court upon the relation of the attorney general and another to determine respond-

[1] Reported in 89 N..W. 175.

ent's right to the office of examiner of titles under the "Torrens system" of registration.   Writ quashed.

*W. B. Douglas*, Attorney General, and *Childs, Edgerton & Wickwire*, for relators.

*Snyder & Gale*, for respondent.

START, C. J.

This is an information in the nature of quo warranto to determine the respondent's right to the office of examiner of titles, to which he interposed a general demurrer.

The sole issue of law raised by the demurrer is this: Is Laws 1901, c. 237, by virtue of which the respondent was appointed such examiner, providing for the Torrens system of registering land titles, constitutional?   The basic principle of this system is the registration of the title of land, instead of registering, as the old system requires, the evidence of such title.   In the one case only. the ultimate fact or conclusion that a certain named party has title to a particular tract of land is registered, and a certificate thereof delivered to him.   In the other the entire evidence, from which proposed purchasers must, at their peril, draw such conclusion, is registered.   Necessarily the initial registration of the title—that is, the conclusive establishment of a starting point binding upon all the world—must rest upon judicial proceedings.   The act in question provides for such proceedings, and the full details thereof, which will be referred to as we proceed.   The act, by its terms, applies only to counties having more than seventy-five thousand inhabitants, and registration is made optional with the landowner. It is the contention of the relator that the act is unconstitutional for the reasons:

1. That it is special legislation, contravening sections 33 and 34 of article. 4 of the state constitution, because the classification of counties according to population for the purposes of the act is unauthorized.

Population, if not limited to the present, may be a basis of classification of counties for the purposes of legislation if germane to the purpose of the law; otherwise not.   State v. District Court of St. Louis Co., 61 Minn. 542, 64 N. W. 190; State v. Sullivan, 72

Minn. 126, 75 N. W. 8; State v. Ritt, 76 Minn. 531, 79 N. W. 535; Murray v. Board of Co. Commrs. of Ramsey Co., 81 Minn. 359, 84 N. W. 103. The subject of classification of counties on the basis of population is an embarrassing one for the courts, for the reason that numerous and complex considerations enter into it, and it is often difficult to determine whether there is any natural relation between the population of counties of the given class and the subject-matter of the law classifying them. Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623. If it is clear that there is no natural relation or connection between the population of counties of a particular class and the subject-matter of the statutes so classifying them for the purposes of legislation, courts ought unhesitatingly to hold them unconstitutional; otherwise it would sanction the classification of counties on the basis of population for any and all purposes of legislation, whereby the constitutional amendment forbidding special legislation would be deprived of all virility. On the other hand, courts ought never to be unmindful of the fact that the lawmaking power is vested in the legislature. Therefore, if there be any facts fairly calling for the exercise of legislative discretion in the classification of particular subdivisions of the state for the purposes of legislation, courts cannot review such discretion, and declare statutes making such classifications invalid, simply because they differ with the legislature as to the propriety of the classification. It is only when the classification is so manifestly arbitrary as to evince a legislative purpose of evading the provisions of the constitution that the courts may and must declare the classification unconstitutional. In considering the constitutionality of a statute, courts will take judicial notice of all facts relevant to the question. State v. Cooley, 56 Minn. 540, 58 N. W. 150; State v. Stearns, 72 Minn. 200, 75 N. W. 210.

If, then, the classification attempted in this act is merely an arbitrary one, it is special legislation, and void. But, if facts exist of which we may take judicial notice, which fairly suggest the practical necessity or propriety of different legislation in respect to land titles in counties of over seventy-five thousand inhabitants than in the other counties of the state, the act is valid. With the question whether the law is a wise or an unwise one we have noth-

ing to do. We are of the opinion that the facts that the largest cities of the state are within the limits of the classified counties, that the platted portions thereof embrace a greater number of subdivisions and parcels of land than the less densely populated portions of the state, that the individual owners of the land are more numerous, the value thereof much greater, and that the records of the evidence of the titles thereto rapidly increase in volume and become more complex with the increase of population, whereby the risks of defective titles, and expenses for abstracts thereof, and the delays and difficulties in transferring real estate, are proportionately increased, were proper for the consideration of the legislature in determining whether there was a practical necessity or propriety for the classification in question, and justify it. The differences suggested are to some extent differences in degree (see Murray v. Board of Co. Commrs. of Ramsey Co., supra); but they are not wholly so, for many of them are essential differences in the conditions and needs in the premises of the three most populous counties of the state and those of the other counties having a much smaller population. It does not appear in this case that the classification was purely arbitrary; on the contrary, the facts suggest a natural reason therefor, which made it a question solely for the legislature. We therefore hold that the act is not void as special legislation.

2. That the act is void because it contemplates the taking of property without due process of law, in violation of both state and federal constitutions.

The act provides, among other things, that the owner of any estate or interest in land may have the title thereto registered by making an application in writing, stating certain facts, to the district court of the county wherein the land is situated. Thereupon the court has power to inquire into the state of the title, and make all decrees necessary to determine it against all persons, known or unknown. The application must be filed and docketed in the office of the clerk of the court, and a duplicate thereof filed with the register of deeds, who is ex officio register of titles. The application is then referred by the court to an examiner of titles, who investigates the titles, and inquires as to the truth of the

allegations of the application, particularly whether the land is occupied or not, and makes and files a report of his examination with the clerk. Upon the filing of the report the clerk issues a summons by order of the court, wherein the applicant is named as plaintiff, and the land described, and all other persons known to have any interest in or claim to the land and "all other persons or parties unknown" claiming any interest in the real estate described in the application are named as defendants. The summons must be directed to such defendants, and require them to appear and answer within twenty days. It must be served in the manner now provided for the service of summons in civil actions, with this exception: that the summons shall be served on nonresident defendants and upon all unknown persons by publishing it in a newspaper printed and published in the county where the application is filed, once a week for three consecutive weeks. In addition to such publication the clerk shall, within twenty days after the first publication, mail a copy of the summons to all nonresident defendants whose place or address is known, and the court may order such additional notice of the application as it may direct. Any interested party may appear and answer. If no appearance is made, the court may enter the default, but must take proof of the applicant's right to a decree, and is not bound by the report of the examiner, but may require further proof. If appearance is made, the case shall be set down for trial, and heard as other civil actions. If the court finds that the applicant has title proper for registration, a decree confirming the title and ordering registration shall be entered. Every such decree shall bind the lands and quiet title thereto, except as otherwise provided in the act, and shall be forever binding and conclusive upon all persons, whether mentioned by name or included in the expression "all other persons or parties unknown," and such decree shall not be opened by reason of the absence, infancy, or other disability, or any proceedings at law for reversing judgment, except as provided in the act, but appeals may be taken to the supreme court as in any other civil action. Any person who has any interest in the land, and who has not actually been served or notified of the filing of the application, may at any time within sixty days from the

entry of such decree appear, and file his sworn answer, providing no innocent purchaser for value has acquired an interest. If there is any such purchaser, the decree of registration remains in full force forever, subject only to the right of appeal, and the person aggrieved must look for his relief to the assurance fund mentioned in the act, and to any person procuring the decree by fraud. Every person receiving a certificate of title and every subsequent purchaser in good faith takes the same free from all incumbrances, except such as are noted thereon. Upon entering the decree of registration, a certified copy thereof must be filed by the clerk in the office of the register of titles, who proceeds to register the title pursuant to the decree. This he does by entering an original certificate in the register of titles, and delivering a duplicate thereof to the owner, who may thereafter convey his title by the execution of deeds and the surrender of his certificate to the registrar for cancellation, who issues a new certificate to the purchaser. No title to registered land in derogation of that of the registered owner shall be acquired by prescription or adverse possession. The judges of the district court are required to appoint one or more attorneys as examiners of title, whose salaries are to be fixed by the board of county commissioners. Such examiners may act as referees on any pending application, but all their acts are subject to review by the district court. Every applicant must pay one-tenth of one per cent. on the assessed value of the land to be registered for the purpose of creating an assurance fund, to be held in trust for the benefit of any one sustaining loss by the operation of the act.

Such is a brief outline of the provisions of the act, which it is necessary to have in mind when considering the question whether the act authorizes the taking of property without due process of law. Counsel for the relator suggest several objections to the law, which are not germane to the particular question whether the act contemplates the taking of property without due process of law. Attention is called to the fact that the act (section 20) allows the defendants twenty days after the service of the summons in which to appear and answer, while by the prescribed form of the summons they are required to answer in ten days. This discrep-

ancy does not affect the constitutionality of the law, or its practical operation, for it is apparent, when all of the provisions of the act as to the summons and the time within which the defendants must answer are considered, that the prescribed form of the summons, in so far as it requires the answer to be filed in ten days, must yield to the other express provisions upon the subject, and twenty days be substituted in the form for ten days.

Again, it is suggested that land held under a registered title cannot be gained or lost by adverse possession, while all land in the counties of the state to which the act does not apply may be so lost or gained; and, further, that the landowners in the counties to which the act applies have a remedy for clearing their titles from clouds, and quieting them, not accorded to other landowners of the state. These are suggestions pertinent to the legislative question of classification, but not to the question whether the procedure for securing a decree quieting the title to the land as a basis for the initial registration is due process of law. If the classification was authorized, none of the suggested matters render the act invalid.

It is also contended by the relator that under the provisions of the act a person may be in actual possession of land the title to which is to be registered and service made upon him by publication, which may result in his being registered out of his title thereto without ever having any actual knowledge of the judicial proceeding instituted to secure a decree clearing and quieting a title as a basis for the initial registration. If this be the correct construction of the provisions of the act relating to the service of the summons, they do not constitute due process of law. Baker v. Kelley, 11 Minn. 358 (480). But the act is not reasonably susceptible of such a construction. The application for registration must be presented to the district court of the county in which the land is situate; hence such occupant is not a nonresident party, nor an unknown one. Having possession of the land, he has an apparent interest therein, and, if he is not the applicant, must be made a party defendant, and the summons served upon him as in civil actions. It is only on nonresidents and unknown persons or parties that service by publication may be made. Nor is this all.

One of the matters which the examiner is particularly charged with the duty of investigating and reporting upon is the occupation of the land, to the end that the court may be advised as to all adverse claimants in possession, that they may be made parties to the proceedings, and served with the summons. It is not reasonably possible, if the mandates of the act are observed, that in any case the occupant of the land would not be made a party to the proceeding, and duly served with the summons.

Actions and proceedings to conclusively establish rights and titles against all claimants and parties, known and unknown, are not novelties in our jurisprudence, for decrees probating wills, distributing estates of deceased persons, quieting title to real estate against unknown heirs and unknown parties, have been repeatedly held to be conclusive on the whole world. It is now the settled doctrine of this court that the district courts of this state may be clothed with full power to inquire into and conclusively adjudicate the state of the title of all land within their respective jurisdictions, after actual notice to all of the known claimants within the jurisdiction of the court, and constructive notice by publication of the summons to all other persons or parties, whether known or unknown, having or appearing to have some interest in or claim thereto. The proceeding provided for by the act in question is such a one. It is substantially one in rem, the subject-matter of which is the state of the title of land within the jurisdiction of the court, and the provisions of the act for serving the summons and giving notice of the pendency of the proceeding are full and complete, and satisfy both the state and federal constitutions. To hold otherwise would be to hold that the courts of this state cannot in any manner acquire jurisdiction to clear and quiet the title to real estate by a decree binding all interests and all persons or parties, known or unknown, for the provisions of this act are as full and complete as to giving notice to all interested parties as it is reasonably possible to make them. That the courts of this state have jurisdiction to so clear and quiet title by their decrees is no longer an open question in this state. Shepherd v. Ware, 46 Minn. 174, 48 N. W. 773; Inglee v. Welles, 53 Minn. 197, 55 N. W. 117; McClymond v. Noble, 84 Minn. 329, 87 N. W. 838. See also

Mayall v. Mayall, 63 Minn. 511, 65 N. W. 942, and Mathews v. Lightner, supra, page 333.

It is further claimed by the relator that the provision of the act which limits the exercise of the right to a party not actually served with process or notified of the proceeding to apply to the court to open the decree and permit him to answer to sixty days after the entry of the decree, and that no proceeding shall be had for the recovery of the land after that time, is unconstitutional. It is urged in this connection that the legislature cannot require a person in the unchallenged possession of land to commence an action or institute any proceeding within a limited time to vindicate his claim, or be barred of all rights in the premises. This is true. Baker v. Kelley, supra. But it is equally true that when a party so in possession is by a summons served as in civil actions, and thereby notified that the land he occupies is claimed by another, and that he is required to appear in court and defend against the claim, he must do so, or be barred conclusively by the judgment entered in the proceeding. Now, as already suggested, all persons in possession of the land must be made parties to the proceeding to secure the registration of the title thereto, and the summons must be served upon them. If the act is complied with, it is extremely improbable that an adverse claimant in actual possession of the land would fail of receiving notice of the pendency of the proceeding to register the title.

However this may be, it is reasonably clear, and we so hold, that the particular provision of the act, which, in effect, forbids the commencement or the defense, in opposition to the decree, of any action or proceeding to recover the land brought more than sixty days after the entry of the decree, does not apply to an adverse claimant in the actual possession of the land, upon whom the summons is not served; for, being in possession, he cannot bring such an action, and his right to defend his possession and title in such a case cannot be made to depend upon his nonaction. So construed, the provision of the act both as to the opening of the decree and as to the commencement of any action or proceeding to recover the land in opposition to the decree is valid as a statute of limitations. The time limit seems to us to be a short one, but,

in view of the complete and far-reaching provisions of the act for notice to all parties, and the fact that the right of appeal as in civil actions is given, we cannot hold that the legislature arbitrarily exercised its discretion in fixing the limit. State v. Messenger, 27 Minn. 119, 6 N. W. 457; Russell v. H. C. Akeley L. Co., 45 Minn. 376,. 48 N. W. 3; London & N. W. M. Co. v. Gibson, 77 Minn. 394, 80 N. W. 205, 777; Henningsen v. City of Stillwater, 81 Minn. 215, 83 N. W. 983. Our conclusion, then, is that the act is not unconstitutional in that it deprives parties of their interest in land without due process of law. Similar statutes providing for the Torrens system of registration have been sustained against a like objection by the courts of other states in carefully considered opinions. Tyler v. Judges, 175 Mass. 71, 55 N. E. 812; People v. Simon, 176 Ill. 165, 52 N. E. 910. A contrary ruling was made in the case of State v. Guilbert, 56 Oh. St. 575, 47 N. E. 551; but the provisions of the statute passed upon in that case as to notice to all persons having any possible interest in the land were not as full as they are in our statute.

3. That the act, in so far as it attempts to confer upon the district courts the power to appoint examiners of titles, is void, because it violates article 3 of the state constitution, vesting the powers of government in three distinct departments.

The claim is without merit. Judicial power includes the authority to appoint all necessary subordinate officers and assistants essential to the conducting of judicial business. The examiners provided for by this act are subordinate officers or assistants of the courts, to aid them in the discharge of the judicial duties imposed upon them by the act. It was therefore competent and proper for the legislature to provide for their appointment by the courts, as much so as would be a statute authorizing them to appoint a stenographer or a receiver in insolvency.

Nor does the act contravene article 3 of the constitution by conferring judicial duties upon the registrars of titles, for it expressly provides that

"All acts performed by registrars * * * shall be performed under rules and instructions established and given by the district court having jurisdiction of the county in which they act."

The registration is the act of the court. The fact that it may be done by the registrar, under general orders, where there is no question, is not different from the power of the clerk to enter judgment, in cases ripe for judgment, under the general order or rule of the court. Tyler v. Judges, supra. Nor does the act attempt to make the court a registration office, as relator claims. It simply confers upon the court certain judicial duties incident to the plan of registering land titles provided by the act.

4. The last reason urged why the act is invalid is that the office of examiner of titles is a county office, which must be filled by popular election, as required by section 4 of article 11 of the state constitution. Examiners of titles are not county officers, within the meaning of this constitutional provision, for the reason already stated in connection with the consideration of the question as to the power of the court to appoint them.

We therefore hold that Laws 1901, c. 237, is constitutional.

Writ quashed.