[No. 5028.]

People ex rel. Smith v. Crissman, Registrar of Titles.

1. **Constitutional Law—Statutes—Titles—Sufficiency.**

The act commonly known as the "Torrens Land Law," Sess. Laws 1903, c. 139, entitled, "An Act Concerning Land Titles," does not, as to such title, contravene art. 5, § 21, Colo. const., which required the subject of an act to be clearly expressed in its title, since such title sufficiently indicates the legislation therein contained in regard to the registration of land titles.— P. 453.

2. **Constitutional Law—Due Process of Law—Registration of Land Titles.**

The act commonly known as the "Torrens Land Law," Sess. Laws 1903, c. 139, provides that the owner of any estate in land may make application to the district court for its registration, whereupon the court shall enter an order referring the application to an examiner of titles, and if, in the examiner's opinion, the applicant has title as alleged, or if the applicant, after an adverse opinion, elects to proceed further, that the clerk of the court shall issue a summons, wherein all persons named in the application, or found to have any interest, shall be named as defendants; § 23 provides that the court shall not be bound by the examiner's report, and that an order confirming title, if no person appear or answer, shall be made only on satisfactory proof of applicant's right; § 24 provides that, on appearance, the court may refer the cause to an examiner as referee, and that his report shall have the same effect as that of any other referee; § 25 provides that the court may order such other hearing, after the filing of the report referred to in section 24, as shall seem proper; § 26 provides that, if applicant has not title proper for registration, the court shall dismiss the application; and § 27, that, if applicant has title, a decree of registration shall be entered. Held, that the claim that the preliminary examination by the examiner is ex parte, and that his report and certificate of opinion is binding on the court and constitutes a judgment that applicant has title proper for registration, is untenable, and hence the act is not, on that ground, in violation of § 25, art. 2, Colo. const., or of the 14th amendment to the federal constitution, as authorizing the taking of property without due process of law; nor is the act in violation of such provisions, on the ground of not being due process of law in that it fails to provide

for an affirmative judgment for defendant, the only decree permissible being one of dismissal if applicant has not title proper for registration, since any one can obtain like relief by filing his application, and since the state has control over remedies which it offers to suitors in its courts.—P. 455.

3.   Same—Executive Powers.

The act commonly known as the "Torrens Land Law," Sess. Laws 1903, c. 139, § 9, providing that all acts performed by registrars of title under that act shall be performed under rules and instructions established and given by the district court, does not devolve executive duties on the court, in violation of art. 3, Colo. const., dividing the powers of government into three distinct departments, and declaring that no person charged with the exercise of powers properly belonging to one department shall exercise any power properly belonging to either of the others.—P. 461.

4.   Counties—Officers—Creation—Constitutional Law.

The act commonly known as the "Torrens Land Law," Sess. Laws 1903, c. 139, § 9, provides that county clerks and recorders of the several counties shall be registrars of titles in their respective counties. § 8, art. 14, Colo. const., provides that there shall be elected in each county a county clerk, who shall be ex-officio recorder of deeds, but does not define his duties. Held, that § 9 of the act does not create a new county office, which is neither filled by appointment, as required by art. 4, § 6, supra, nor by election or appointment, as provided by art. 14, § 12, since only additional duties are imposed upon said clerk.—P. 462.

*Error to the District Court of Logan County.
Hon. E. E. Armour, Judge.*

Information in the nature of *quo warranto* by the people, on relation of S. A. Smith, against Ella L. Crissman, as registrar of titles, in and for Logan county, Colorado.  From a judgment for defendant, relator brings error.                         *Affirmed.*

Decision *en banc.*

Mr. QUITMAN BROWN and Mr. W. L. HAYS, for plaintiff in error.

Mr. T. E. MUNSON, for defendant in error.

Mr. EDWARD T. TAYLOR, *amicus curiae.*

This is an information in the nature of *quo warranto* to determine the right of the defendant in error to the office of registrar of land titles. The relator predicates his right to the relief asked upon the ground that an act concerning land titles, commonly known as the Torrens Land Law, approved April 11, 1903, published in the Session Laws of 1903, at pages 311-352 inclusive, is unconstitutional:

"First: In that the subject of said act is the registration of land titles, and this subject is not clearly expressed in the title thereof, which title is 'An Act Concerning Land Titles,' nor is the subject of the act expressed at all in said title.

"Second: In that the procedure in the district court prescribed by said act to obtain initial registration of title is violative of § 25, article 2, of the constitution of Colorado, and of § 1, article 14, of the amendments to the federal constitution, as not being due process of law, and as denying to persons within the jurisdiction of the state the equal protection of its laws, (a) for that the plaintiff's case is partially tried and disposed of by the court before persons adversely interested are brought into court and made parties to the proceeding; and (b) for that no judgment or decree can be rendered or entered in favor of a defendant in proceedings under said act, regardless of the showing he may make.

"Third: In that by section 9 and other sections of the act the duty of executing the act is devolved upon the district court, in violation of articles 3 and 6 of the constitution of the state of Colorado.

"Fourth: In that the said act creates a new county office—that of registrar of titles—which is neither filled by appointment, as required by § 6, article 4, nor by election *or* appointment, as provided by § 12, article 14, of the constitution of Colorado;

but the incumbency of which office is designated by the legislature itself by § 9 of said act."

To this information respondent interposed a demurrer, which was sustained, and judgment rendered dismissing the action at relator's costs. To this judgment relator excepted, and brings the case here on error.

Mr. Justice Goddard delivered the opinion of the court:

The only question presented to us upon the record is whether the act in question is, for the reasons assigned, unconstitutional.

1. Is the title to the act obnoxious to the provisions of section 21, article 5, of our constitution, in that it does not clearly express the subject of the act?

In his argument in support of the objection that the title to the act is within the inhibition of section 21, article 5, of the constitution, counsel for plaintiff in error admits that the subject legislated upon in the body of the statute is germane to that expressed in the title of the act, but contends that the title is too general in that it does not clearly express in what particular the legislation contemplated should affect land titles; as counsel puts it: "It is not enough that the 'general intent' of a statute or general subject is 'germane' to a subject expressed in the title which covers not only the general subject of that particular statute, but the entire field, as well, of one of the grand divisions of law. * * * Therefore, it is not competent under the title, 'An Act Concerning Land Titles,' to enact a statute which covers but one of the general sub-divisions of the law of land titles." In other words, that while the subject-matter of the statute is expressed in the title, other and different legislation upon the same subject, or division of the

subject, would also be germane and permissible under such title.

The intent of this constitutional provision is to prevent the union in the same act of incongruous matters, and of which the title gives no intimation. This purpose is accomplished when a law has but one object, which is fairly expressed by its title. Mr. Cooley, in discussing the particularity required in stating in the title the object of the legislation to be enacted thereunder, says, at pages 205-206, 7th edition of his work on Constitutional Limitations:

"The general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title. * * * The generality of a title is, therefore, no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. The legislature must determine for itself how broad and comprehensive shall be the object of a statute, and how much particularity shall be employed in the title in defining it."

The purpose of a like constitutional provision was declared by the supreme court of New Jersey in the case of *State v. Town of Union*, 33 N. J. L. 350, to be "to prevent surprise upon legislators by the passage of bills, the object of which is not indicated by their titles, and also to prevent the combination of two or more distinct and unconnected matters in the same bill. * * * The degree of particularity which must be used in the title of an act rests in legislative discretion, and is not defined by the constitution. There are many cases where the object might with great propriety be more specifically stated, yet the generality of the title will not be fatal to the act, if by fair intendment it can be connected with it."

This court has frequently advised the legislature

against attempting to make the title of acts too specific. In the case of *Brown v. Elder,* 32 Colo. 527, it was urged that the title to the revenue act therein considered was too general. Mr. Justice Campbell, speaking to this objection, said:

"The further objection here urged that the title of the act is too general is not usually a tenable one. Indeed, this court, in passing upon the titles of acts, has advised the general assembly against the attempt to make them too specific. It is true that if the title is so general as to be misleading, it may be obnoxious to the constitutional provision under consideration, and courts in some cases have declared titles so general as to be misleading; such, for example, as *Northwestern Mfg. Co. v. Chambers,* 58 Mich. 381, and *Stegmaier v. Jones,* 52 Atl. 56, but there is no such objection to the present title, in view of the financial history of the state, of which the courts, as well as the people, are advised."

We do not think that the title to this act contravenes the purpose sought to be accomplished by section 21 of article 5 of our constitution, and being one referring to land titles, it not only embraces the provisions in the body of the act, but sufficiently indicates the legislation therein contained in regard to the registration of land titles.

2. The second objection to the act is that the procedure prescribed does not constitute due process of law: (a) because "the plaintiff's case is partially tried and disposed of by the court before persons adversely interested are brought into court and made parties to the proceeding"; (b) because no judgment or decree can be rendered in favor of a defendant regardless of any showing he may make.

The act provides, among other things, that the owner of any estate or interest in land, whether legal or equitable, desiring to have his title thereto regis-

tered, may make application in writing, stating certain facts, to the district court of the county wherein the land is situated. Such application is filed in the office of the clerk of such court and docketed, and a duplicate thereof filed in the office of the clerk and recorder of the county, and which has the force and effect of a *lis pendens*. The applicant shall also file with the clerk, at the time the application is made, an abstract of title prepared and certified by the county clerk and recorder. Thereupon the court enters an order referring the application to an examiner of titles, who shall proceed to examine into the title and into the truth of the matters set forth in the application, and particularly whether the land is occupied, the nature of the occupancy, if occupied, and by what right, and also as to all judgments against the applicant or those through whom he claims title. He shall search the records and investigate all the facts brought to his notice, and file in the case a report thereon, including a certificate of his opinion upon the title. The clerk of the court thereupon gives notice to the applicant of the filing of such report. If the opinion of the examiner is adverse to the applicant, he is allowed by the court a reasonable time in which to elect to proceed further, or to withdraw his application, and such election shall be made in writing and filed with the clerk. If, in the opinion of the examiner, the applicant has a title, as alleged, and proper for registration; or, if the applicant, after an adverse opinion of the examiner, elects to proceed further, the clerk of the court shall, immediately upon the filing of the examiner's opinion, or the applicant's election, as the case may be, by order of the court issue a summons substantially in the form provided in the statute, wherein the applicant is named as plaintiff, and all persons named in the application, or found by the report of the examiner as being in

possession of the premises, or as having of record any interest or claim to the land, or "All other persons or parties unknown claiming any right, title, estate, lien or interest in, to, or upon, the real estate described in the application," are named as defendants.

The manner of the service of the summons is provided as to resident and non-resident defendants, and upon all unknown persons. When the service is by publication, as provided, in addition to such publication, the clerk shall, within twenty days after the first publication, send a copy thereof by mail to such defendants who are not residents of the state, whose place of address is known or stated in the application, and whose appearance is not entered, and who are not in person served with the summons. Any person claiming an interest, whether named in the summons or not, may appear and file an answer within the time named in the summons, or within such further time as may be allowed by the court. If no person appears and answers within the time named in the summons, the court may at once, upon the motion of the applicant, no reason to the contrary appearing, upon satisfactory proof of the applicant's right thereto, make its order and decree confirming the title of the applicant and ordering registration of the same. The court is not bound by the report of the examiners of title, but may require other and further proof.

In case an appearance is entered and answer filed, the cause is set down for hearing on motion of either party, and the court may refer the cause, or any part thereof, to one of the examiners of title as referee to hear the parties and their evidence, and make report thereon to the court. His report has the same force and effect as a referee appointed by the

district court under the laws relating to the appointment and duties of referees.

The court may order such other or further hearing of the cause before the court, or before the examiner of titles, after the filing of the report of the examiner above referred to, and require such other or further proof by either of the parties, as the court may deem proper. If, in any case, after hearing, the court finds that the applicant has not title proper for registration, a decree is entered dismissing the application. If the court, after hearing, finds that the applicant has title proper for registration, a decree of confirmation of title and registration shall be entered.

The judges of the district court are required to appoint a competent attorney in each county within their district to be examiner of titles and legal adviser of the registrar. As above stated, such examiners may act as referees on any pending application, but all their acts are subject to review by the district court.

The foregoing is a substantial outline of the provisions of the act pertinent to the objection urged by plaintiff in error in support of his contention that the act authorizes the taking of property without due process of law, which, definitely stated, is that the preliminary examination by the examiner is *ex parte,* and his report and certificate of his opinion upon the title is binding upon the court, and constitutes a judgment of the court that plaintiff has title proper for registration, which is the important issue to be determined in the case, should any defendant appear.

This claim is untenable. Section 23 expressly provides that "The court shall not be bound by the report of the examiners of title, but may require other or further proof"; and further enacts that if no person appears and answers, only upon satisfac-

tory proof of the applicant's right thereto can the court make its order and decree confirming the title of the applicant, and ordering registration of the same. In case of an appearance and answer, the cause is set down for hearing on motion of either party. The court may refer the cause, or any part thereof, to one of the examiners of title, as referee, to hear the parties and their evidence and make report thereon to the court, and that "his report shall have the same force and effect as that of a referee appointed by the district court under the laws of this state now in force, and relating to the appointment, duties and powers of referees."—Section 24.

Section 25 provides: "The court may order such other or further hearing of the cause before the court or before the examiner of titles after the filing of the report of the examiner (referred to in the last preceding section), and require such other or further proof by either of the parties to the cause as to the court shall seem meet and proper."

And in section 26 it is further provided: "'If, in any case, after hearing, the court finds that the applicant has not title proper for registration, a decree shall be entered dismissing the application."

And section 27 provides: "If the court, after hearing, finds that the applicant has title, whether as stated in his application or otherwise, proper for registration, a decree of confirmation of title and registration shall be entered."

It, therefore, clearly appears that, regardless of the opinion and report of the examiner, the court hears and determines the respective rights of the parties upon the evidence introduced, and does not determine the right of the applicant even in case of default, except upon satisfactory proof.

In the case of *State v. Westfall*, 85 Minn. 437, the power of the court to appoint an examiner of

titles clothed with the same duties imposed upon examiners of titles by our statute, was challenged, upon the ground that the act, in so far as it attempted to confer such power upon the courts, was void, because it violated the provisions of the constitution vesting the power of government in three distinct departments. Speaking to this objection, the court, at page 446, says:

"The claim is without merit. Judicial power includes the authority to appoint all necessary subordinate officers and assistants essential to the conducting of judicial business. The examiners provided for by this act are subordinate officers or assistants of the courts, to aid them in the discharge of the judicial duties imposed upon them by the act. It was, therefore, competent and proper for the legislature to provide for their appointment by the courts, as much so as would be a statute authorizing them to appoint a stenographer or a receiver in insolvency."

While in that case the particular objection here urged was not expressly noticed, yet in the course of its opinion the court refers to the duties imposed upon the examiner in connection with the other provisions of the act, and upholds in its entirety the procedure provided in a statute, which is identical with ours, as constituting due process of law.

The further contention is that the act is not due process of law in that it fails to provide for an affirmative judgment in favor of a defendant, the only decree permissible being one of dismissal in case the court, after hearing, finds that the applicant has not title proper for registration. The act does accord to all persons equal rights and privileges. Any one desiring to avail himself of its terms can do so by filing his application, and can obtain the registration of his title by complying with the requirements of the statute. Although the legislature has seen fit to

allow affirmative relief only to the applicant who initiates the proceeding, this does not render the proceeding objectionable for the reason assigned. The right to a particular remedy is not a vested right. Every state has complete control over the remedies which it offers to suitors in its courts.—Cooley's Const. Lim. 515.

It is only by virtue of the statute that a defendant may avail himself of affirmative relief by way of set-off or counter-claim. It was, therefore, clearly within the province of the legislature to limit the relief afforded by the statute to the applicant who initiates the proceeding.

3. It is claimed that executive duties are devolved upon the court in violation of article 3 of the constitution, by section 9, which provides that "All acts performed by registrars   *   *   *   under this law shall be performed under rules and instructions established and given by the district court having jurisdiction of the county in which they act." This objection was urged against statutes containing like provisions in *Tyler v. Judges,* 175 Mass. 71, and *State v. Westfall, supra,* and was there held to be untenable.

In *State v. Westfall,* it was said:

"The registration is the act of the court. The fact that it may be done by the registrar, under general orders, where there is no question, is not different from the power of the clerk to enter judgment, in cases ripe for judgment, under the general order or rule of the court.—*Tyler v. Judges, supra.* Nor does the act attempt to make the court a registration office, as relator claims. It simply confers upon the court certain judicial duties incident to the plan of registering land titles provided by the act."

Article 3 of our constitution is identical with article 3 of the constitution of Minnesota. The fore-

going decision is, therefore, directly in point, and we think correctly rules the question here presented.

4. The fourth and last proposition is that the legislature creates a new county office, that of registrar of titles, which is neither filled by appointment, as required by section 6, article 4, nor by election or appointment, as provided by section 12, article 14, of the constitution, but by section 9 of the act, the legislature itself designates the incumbent in contravention of the foregoing provisions.

Section 9, *inter alia,* provides: "The county clerks and recorders of the several counties of this state shall be registrars of titles in their respective counties."

Section 8, article 14, of the constitution, provides, in part, as follows: "There shall be elected in each county * * * one county clerk, who shall be *ex-officio* recorder of deeds and clerk of the board of county commissioners."

While the office of county clerk is created by this provision of the constitution, none of his duties are therein defined, but all the duties pertaining to the office, both in his capacity as clerk and as recorder of deeds, are to be prescribed and enjoined by the legislature, and the duties he is to perform as recorder of deeds have been specifically defined and imposed by statute.—Mills' Ann. Stats., §§ 833 to 841 inclusive. It was clearly within the province of the legislature to impose upon the clerk in his capacity of recorder of deeds the duties enjoined upon him by this statute. Making him registrar of titles does not constitute him a new county officer, but simply changes his duties in this, that instead of recording the evidence of titles, as heretofore provided, he registers the ultimate fact, or conclusion, that a certain party named has title to a particular tract of

land as adjudged by the court. We think that this objection, also, is without merit.

Our conclusion is that the court below properly sustained the demurrer and dismissed the action. Its judgment is affirmed.                    *Affirmed.*

Decision *en banc,* all the justices concurring.