CHIEF JUSTICE WHITE and Mr. JUSTICE SCOTT concur.

---

[No. 8480.]

WHITE ET AL. v. AINSWORTH ET AL.

1. REGISTRATION OF LAND TITLES—*Statute Construed*. The act of 1903 (Rev. Stat., c. 28, II); has not the effect to make the State an insurer of the title to lands.

*Semble,* the statute might be sustained, even though the provisions of sections 83, 84, 85, were eliminated.

The statute does not effect the taking of land, and has none of the characteristics of a proceeding under the statute of eminent domain.

Nor does it confer judicial powers upon the registrar. Nor is the act a violation of art. II of the Constitution, or the Fourteenth Amendment to the Federal Constitution.

2. ——*What Titles May Be Registered.* A tile acquired by a decree quieting a tax title. The proceeding for the registration of the title, being regular, the Court, upon bill to vacate the order for registration, is not to pass upon the sufficiency of the evidence in the former action.

3. ——*Infants Affected.* A decree of registration is not to be vacated for the infancy of those claiming adversely thereto.

4. CONSTITUTIONAL LAW—*Registration of Land Titles.* The statute for the registration of land titles (Rev. Stat., c. 28, II), is not unconstitutional.

5. ——*Legislative Powers—Vacation of Judgment.* The time within which a judgment may be vacated and the cause reopened, is a matter as to which the Legislature may prescribe in its discretion.

6. ——*Due Process of Law.* The provisions of sec. 25 of art. II of the Constitution are applicable to rights, not to remedies.

7. ——*Notice to Unknown Persons.* In proceedings under the Registration Act is due process of law.

*Error to Phillips District Court.* Hon. H. P. BURKE, Judge.

Mr. JOHN F. MAIL, Messrs. VAILE, McALLISTER & VAILE, for plaintiffs in error.

Messrs. MUNSON & MUNSON, for defendants in error.

Mr. JUSTICE HILL delivered the opinion of the court.

The plaintiffs in error as the minor heirs of Jennie M. White, deceased, brought this action through Stewart W. Beggs, their next friend, the purpose of which to have cancelled a tax deed to one hundred sixty acres of land in Phillips County, to have cancelled and held for naught a decree of the District Court of Phillips County, quieting title thereto in the tax title claimant, to have cancelled and held for naught a subsequent decree of the

District Court confirming the title to said land and or-
dering that it be registered as provided by chapter 139,
Session Laws 1903, concerning land titles, and to have
cancelled all deeds and conveyances therefor made sub-
sequent to the registration proceedings. The court held
that the registration proceedings were regular and valid;
that the defendant in error, R. N. White, the first grantee
thereunder, and his grantee, The White Realty Company,
were innocent purchasers for value without notice of any
alleged defect in the title, and that he and his grantee
were entitled to protection as innocent purchasers under
the provisions of the 1903 act.

Numerous errors are assigned. In order to prop-
erly consider them, some of the undisputed facts will
be mentioned: It appears that Mrs. White's maiden name
was Beggs; that from 1887 to the latter part of 1890,
inclusive, she lived in Holyoke, the county seat of Phillips
County, where she was a teacher in the public schools;
that in the autumn of 1890 she left Holyoke and went
to or near Mercer, Pennsylvania, where she resided until
her death, never returning to Colorado; that in 1893,
at Mercer, Pennsylvania, she was married to Hugh
White; that the plaintiffs in error were born at or near
Mercer, Pennsylvania, as follows, viz., Irma J. in 1894,
Mary in 1896 and William in 1901; that they, with their
father, still reside there; that the mother died there in
1901; that some years after her marriage, and in Janu-
ary, 1899, the mother, under the name of Jennie M.
White, became the owner of this land; that in January,
1904, the defendant in error, Ainsworth, procured a tax
deed for it; that in April, following, in a suit in which
Jennie M. White was named defendant, he procured a
decree of the District Court of Phillips County quieting
his title thereto; that during the same month he conveyed
it to the defendants in error Schultz, Slama, Roether

and McKibben; that on March 25, 1907, after securing other conveyances for it, McKibben brought suit, and secured a decree confirming title in him, and an order of registration in due form, bringing this land under the provisions of our 1903 act concerning registration of titles commonly called the Torrens System; that thereafter the land was registered as provided by said act and was, by him, transferred to R. N. White, who thereafter transferred it to The White Realty Company; that the last two transfers were under the provisions of the registration act.

Counsel for plaintiffs in error contend that our registration act is unconstitutional for four reasons, which they allege were not urged in *People v. Crissman,* 41 Colo. 450, wherein the validity of this act was sustained against any reason then assigned. The first is because it engages the state in the business of insuring titles. A sufficient answer to this is to call attention to the fallacy of the assumption. Section 83 provides that "Upon the original registration of land under this act, and also upon the entry of a certificate showing title as registered owners in heirs or devisees, there shall be paid to the registrar of titles one-tenth of one per cent of the assessed value of the real estate * * * as an assurance fund." Section 84 provides how this fund shall be handled. Section 85 provides that any person sustaining loss through an omission, mistake or misfeasance, etc., of the registrar, examiner of titles or clerk of court may bring an action against the County Treasurer for damages to be paid out of the assurance fund. Section 86 provides if the action is for loss or damages arising through an omission, mistake or misfeasance of the Registrar, Examiner or clerk of court, the treasurer shall be the sole defendant, but if the action is brought for loss or damage arising only through fraud or wrongful act of some

person, other than the Registrar, Examiner or clerk, or arising jointly through the fraud or wrongful act of such other person and the omission, mistake or misfeasance of the Registrar, Examiner or clerk, then such action shall be against both the County Treasurer and such other person, and in case there are other defendants aside from the treasurer and a judgment for damages is obtained, that no judgment shall be entered against the County Treasurer, unless execution against the other defendants shall be returned unsatisfied in whole or in part, etc. We are unable to appreciate wherein these provisions make the state an insurer of title. The act provides a remedy for mistake committed by the governmental officers, and also against other parties; but in such instance it only agrees to pay upon the happening of any of the events mentioned in the sections, and then only out of a certain fund, which is created by a payment to the registrar by each person registering title to land. It is not intended for the insurance of land titles nor as compensation for land taken without the owner's consent, but merely as a safeguard or protection, to that extent, in favor of any one who might perchance be injured without other remedy by reason of the provisions of the act. It is quite probable, although unnecessary to determine, that the law could stand even though this indemnity feature were eliminated, and no provisions made for any such suit by claimants of this kind. Such was the holding in *People v. Simon,* 176 Ill. 165, 52 N. E. 910, 44 L. R. A. 801, 68 Am. St. 175.

The second contention that it fails to provide adequate compensation for property taken can be answered by calling attention to the fact that the act does not provide for the taking of land any more than our act to quiet title provides for such purpose, but to the contrary, it provides a means of procedure heretofore adopted in

some states and other countries for a final determination as to whether the petitioner is the owner of the land, and if so, then for its registration accordingly. It provides a means for obtaining service, a mode of procedure and determination by the court. It has none of the elements of a procedure to take land without the owner's consent, such as a condemnation suit. To say that the act does not provide adequate compensation to those who claim an interest in the land, the title of which is sought to be settled, would be in effect to say that a decree of court, after trial concerning title, is a means of taking land. This act requires the filing of the application in the District Court, also the filing of an abstract of title to be prepared by a recognized authoritative abstracter. It provides for the examination of this title by an attorney to be appointed by the court, for his report upon it, and, if favorable, it then provides for the issuance of a summons, and the service of the summons upon all parties known, or shown by the abstract to have, or claim, any interest in the property. It provides that the summons shall also run against "all other persons or parties unknown claiming any right, title, estate, lien or interest in, to, or upon the real estate described in the application herein." It provides for personal service upon all residents of the state, for a copy to be sent to all known non-residents and a publication of the summons in a newspaper, which it provides shall be notice to all unknown claimants or parties having any interest therein. It allows time for the filing of answers, provides for trial, etc. When this procedure is followed and a court of competent jurisdiction has made its finding whether the applicant has title or not, we cannot agree that it constitutes the taking of property without just compensation.

The third reason urged is that it confers judicial powers upon the Registrar. This contention was ad-

versely passed upon in *People v. Crissman, supra,* where-
in the court, adopting the theory set forth in *State v.
Westfall,* 85 Minn. 437, 89 N. W. 175, 59 L. R. A. 297, 89
Am. St. 571, quoted therefrom as follows:

"The registration is the act of the court. The fact
that it may be done by the registrar, under general or-
ders, where there is no question, is not different from the
power of the clerk to enter judgment, in cases ripe for
judgment, under the general order or rule of the court.
—*Tyler v. Judges, supra.* Nor does the act attempt to
make the court a registration office, as relator claims. It
simply confers upon the court certain judicial duties
incident to the plan of registering land titles provided
by the act."

Following this quotation this court said:

"Article 3 of our Constitution is identical with ar-
ticle 3 of the constitution of Minnesota. The foregoing
decision is, therefore, directly in point, and we think cor-
rectly rules the question here presented."

This language is criticised by counsel. They say
that in other parts of the former opinion it was held that
under this act the duties of the court, and of the regis-
trar as the hand of the court, are judicial in their char-
acter, and that such judicial powers cannot be conferred
upon a County Clerk who is an executive officer. We
cannot agree with counsel as to their interpretation of
the former opinion, when applied to the County Court,
but to the contrary, the case of *Tyler v. Judges,* 175
Mass. 71, 55 N. E. 812, 51 L. R. A. 433, was cited in the
former opinion when applied to the first registration,
which is to the effect that the act is purely that of the
court, and that of the County Clerk purely ministerial.
When it comes to subsequent registration, counsel's con-
tention can be answered in the language of Chief Justice
Holmes in *Tyler v. Judges, supra,* as follows:

"It is said that as his decision affects title it must be judicial. But here again it is necessary to use a certain largeness in interpreting broad constitutional provisions. The ordinary business of registration is very ministerial. There is no question to be raised or which can be raised. If there is a question, either raised by any party in interest or occurring to the assistant recorder, it is to be referred to the judge for decision."

Section 49 of our act provides:

"When any party in interest does not agree as to the proper memorial to be made upon the filing of any instrument (voluntary or involuntary) presented for registration, or where the registrar of titles is in doubt as to the form of such memorial, the question shall be referred to the court for decision, either on the certificate of the registrar of titles or upon the demand in writing of any party in interest.

The registrar of titles shall bring before the court all the papers and evidence which may be necessary for the determination of the question by the court. The court, after notice to all parties in interest and a hearing, shall enter an order prescribing the form of the memorial, and the registrar of titles shall make registration in accordance therewith."

It will thus be observed, as held by the Supreme Court of Illinois, in *People v. Simon, supra,* where this question was thoroughly considered, that while the Registrar by such laws is presumed to exercise some sound judgment in complying with the provisions of the law, yet under the statute, the act of registration is practically ministerial, because when there is a doubt in his mind, or any person in interest, the matter can be referred to the court. Where a hearing is provided, the court determines the question, and the result is entered accordingly.

The fourth constitutional objection urged is, that it takes property without due process of law because it

fails to provide adequate opportunity to owners to be heard. This question was passed upon in the former opinion, wherein it was held that the act was not void on the ground that it violated section 25 of article II. of our Constitution, or the fourteenth amendment to the federal constitution, as authorizing the taking of property without due process of law. Counsel claim that the question of lack of notice, and consequently lack of opportunity to be heard, was not raised in the former case. The act provides for the service of summons by publication against non-resident defendants, etc. It provides time to answer it; also, provides that any person having an interest in or lien upon the land, who has not been actually served with process, or notified of the filing of the application, or the pendency thereof, may, at any time within ninety days after the entry of such decree, and not afterwards, appear and file his sworn answer to such application, provided he had no actual notice of the proceedings during their pendency. The time within which a judgment may be vacated and a person allowed to plead, is a matter of procedure which the state, through its law-making body, has a right to fix as it sees fit. Under our quieting title provision, the time is fixed at six months after the adjournment of the term, under this act ninety days after the entry of decree. Under the Minnesota act, from which ours appears to have been taken, it was fixed at sixty days after the entry of decree. In commenting upon this question in *State v. Westfall, supra,* the court, at page 445, said:

"The time limit seems to us to be a short one, but, in view of the complete and far-reaching provisions of the act for notice to all parties, and the fact that the right of appeal as in civil actions is given, we cannot hold that the legislature arbitrarily exercised its discretion in fixing the limit."

Section 28 provides for the bringing of an independent action at any time within ninety days after the entry of judgment. Counsel contends that this time is too short, for which reason constitutes a taking of property without due process of law. Under our present procedure to quiet title, or to remove a cloud when a decree is entered, no independent action is thereafter provided. In this respect the registration act is more liberal than any provision we have thus far had. The constitutional provision pertainng to due process of law is applicable to rights, not remedies. Pertaining to the constitutionality of remedies, in Vol. 6, Am. & Eng. Ency. of Law, (2nd ed.), at page 947, it is said:

"A party has no vested right in a remedy, and the legislature may pass laws creating, altering, modifying, or even taking away remedies for the recovery of debts; may change the grounds upon which an attachment may issue; may authorize the court to amend civil process; may change the remedy as to issuing executions; may change the form of action, the rule for payment and recovery of costs, the time for holding a term of court; may abolish imprisonment for debt; may authorize a court to correct its judgments; may change the rule for measure of damages; may change the law as to the necessary parties to a suit, as to the continuance of cases and times of pleading therein, or as to the rules of practice in the courts."

It is claimed because Mrs. White was dead at the time the registration suit was brought and the plaintiffs in error were not mentioned by name as defendants in that suit, that it does not constitute due process of law against them. In *Hamilton v. Brown,* 161 U. S. 256, 40 L. Ed. 691, 16 Sup. Ct. 585, it was held that the legislature may provide for determining and quieting the title to real estate within the limits of the state and within the jurisdiction of the court, after actual notice to all

known claimants, and notice by publication to all other persons. In that case the published notice to the unknown claimants read "to all persons interested." This identical question was under consideration in *Tyler v. Judges, supra,* where it was held that a published notice was sufficient without notice by name to those outside the state. To the same effect is *State v. Westfall, supra; Robinson v. Kerrigan,* 151 Cal. 40, 90 Pac. 129, 121 Am. St. 90, 12 Ann. Cas. 829; *Title & Document Restoration Co. v. Kerrigan,* 50 Cal. 289, 88 Pac. 356, 8 L. R. A. (N. S.) 682, 119 Am. St. 199. It is admitted, that at the time the registration suit was brought, the plaintiffs in error were residents of Pennsylvania; that the summons provided by this act was regularly published. It included as defendants "all other persons or parties unknown, claiming any right, title, estate, lien or interest in, to or upon the real estate described in the application herein." The record shows that a guardian *ad litem* was appointed, who appeared and filed answer stating that he knew of no minors, nor mental incompetents who had or claimed any interest in the land, but denied the allegations of the petition and demanded a strict proof. The reasoning in the authorities heretofore cited is convincing that in this case the summons served upon the plaintiffs in error by publication under the designation of "all other persons or parties unknown," etc., constitutes due process of law and was sufficient to give the court jurisdiction under the registration act. This act having heretofore been held valid in *People v. Crissman, supra,* the constitutionality of similar acts having been sustained in Illinois, Massachusetts and Minnesota, and an act quite similar, in so far as the procedure is concerned, in California, we cannot agree with counsel in any part of their attacks upon it.

It is urged that the decree holding the title to be in McKibben, and ordering its registration was obtained

through fraud; that this fact was known by R. N. White, the first grantee under the registration act, and for these reasons it should be set aside. *Dewey v. Kimball,* 89 Minn. 454, 95 N. W. 317, 96 N. W. 704; *In re Riley,* 120 Minn. 210, 139 N. W. 361, L. R. A. 1916-D; *Hoffman v. Superior Court,* 151 Calif. 386, 90 Pac. 939; *Ware v. Easton,* 46 Minn. 180, 48 N. W. 775, are relied upon to sustain this position. A sufficient answer to this contention is that the court found otherwise as to R. N. White; also, found that he was an innocent purchaser for value relying upon a registered title, etc. An examination of the record fails to disclose any real conflict in the testimony upon this question; that of Mr. White is direct and positive. Any contradiction of it is by inference only, and upon the assumption as to what might have been, such as because Jennie M. Beggs once lived at Holyoke, and taught school there, that he ought to have known that she was the same person, who, under the name of Jennie M. White, at Mercer, Penn., nine years thereafter, purchased this land and later died, about fourteen years after leaving Holyoke, etc. If such testimony can be said to conflict with Mr. White's positive testimony to the contrary, it then became a question for the trial court to determine, which he did, and which findings, under such circumstances, cannot be disturbed by this court. We need not determine whether any fraud practiced by McKibben in securing his registration of the land would be material, for the reason that counsel were not denied the right to establish it, but failed to do so by any testimony.

It is claimed that the decree is void for the reason that the registration act cannot be invoked in aid of a void title. Counsel allege that the tax deed to Ainsworth upon which he secured his decree quieting title to him was void on its face, for which reason the decree quieting title thereon was void. The trial court declined

to consider the contentions pertaining to the regularity of the original tax deed, or the evidence presented in the case in which the title was attempted to be quieted, for the reason that the decree, etc., in the quieting title action were matters of evidence upon which the trial court evidently acted in the registration suit. In this we find no error. It is not claimed that the proceedings were irregular in the registration suit, or that the plaintiffs in error were not made parties thereto in the manner provided by the act. The substance of this contention is, that the evidence upon which the court sustained the McKibben title was insufficient to justify that finding because the previous decree quieting the title in Ainsworth was void; in other words, the the proceedings and evidence in the first suit to quiet title were insufficient to support the decree; that for that reason the court, in the registration suit was wrong in giving effect and recognizing as valid the decree in the quieting title action, and for this reason that the trial court in this suit should have held that the decree in the registration suit was void, because, in the trial it received in evidence and recognized as valid a former decree in a former suit, because the proceedings and evidence in the former suit were insufficient to justify the decree rendered. We find no error in this respect. The evidence upon which the court acted in the registration suit was not a matter for consideration by the trial court in this suit. The proceedings therein being regular, the decree was binding upon the court in this action and it was not at liberty to pass upon the sufficiency of the evidence upon which the other decree was rendered. This question was under consideration in *Steinhauer v. Colmar*, 11 Colo. App. 494, wherein at page 499, 55 Pac. 293, the court uses the following language:

"The first averment was that the judgment against the Mutual Aid Association was void, because there was

no evidence to sustain it, and because the complaint upon which it was rendered did not state a cause of action. In the argument no notice is taken of this allegation, and we shall not notice it except to say that a judgment is not void merely because it was rendered without evidence, or upon an insufficient complaint; and further, that the question whether it was rightfully or wrongfully rendered, cannot be raised in this suit."

To the same effect is *Harter v. Shull*, 17 Colo. App. 162, 67 Pac. 911; also *Long v. Long*, (Colo.), 162 Pac. 146; *Homer v. Fish*, 18 Mass. 435, is a leading case upon this proposition; at page 439 the court says:

"It certainly is a principle admitted by all courts in the abstract, that a matter of controversy, which has been inquired into and settled by a court having jurisdiction of the subject, cannot be drawn into question again, in another suit between the same parties, for the purpose of defeating or avoiding the effects of a judgment of the court to which it has been submitted."

In this respect we are not overlooking counsel's claim of lack of jurisdiction in the quieting title suit because Mrs. White was dead at the time the decree was rendered, and her minor heirs were not parties to it; but these were matters for consideration in the registration suit; they were evidence of facts, which if true, might properly have defeated the finding in McKibben's favor in the registration action, but these facts cannot change the rules of evidence in the cases last cited, nor allow the trial court in this action to decide the sufficiency of the testimony upon which the decree was based in the registration suit. This would simply lead to another trial of the facts involved in the former action, which is not permissible.

It is claimed that the registration act was not intended to apply to minors nor take away from them the right to redeem from any tax sale or tax deed, as pro-

vided by statute, and that any decree purporting to so do is absolutely void. A part of this contention is answered in response to the previous one, viz., that the evidence upon which the court acted in the registration suit is not a subject of consideration in this suit, for this reason the question of the right of minors to redeem from a tax sale, where raised in the proper method and at the proper time, is not before us, but we cannot agree with counsel that it was not intended by the registration act to allow titles to be quieted where the alleged interest of minors was involved. Section 27 of the act, in part, reads:

"Every decree of registration shall bind the land, and quiet the title thereto, except as herein otherwise provided, and shall be forever binding and conclusive upon all persons, whether mentioned by name in the application ,or included in 'all other persons or parties unknown claiming any right, title, estate, lien or interest in, to, or upon the real estate described in the application herein' and such decree shall not be opened by reason of the absence, infancy or other disability of any person affected thereby, nor by any proceeding at law or in equity for reversing judgments or decrees, except as herein especially provided. An appeal may be taken to the Supreme Court within the same time, upon like notice, terms and conditions as are now provided for the taking of appeals from the District Court to the Court of Appeals or Supreme Court in civil actions."

It will be observed this section specifically states that such decree shall not be opened by reason of infancy or other disability of any person affected thereby. There is no escape from this language, or that it was intended by the act to allow titles to be quieted wherein the interest of minors was affected. To say that it was not intended to apply to minors, would be to ignore its express declarations to the contrary. Other sections in-

dicate that it was intended to apply to every one and settle at one time all questions concerning the title of the applicant to the property involved. To give it any other interpretation, would be doing violence to the language used.

The judgment is affirmed.

*Affirmed.*

Decision *en banc.*

Mr. JUSTICE TELLER not participating.