## BAKER *v.* CITY OF CARTERSVILLE.

1. The judgment of a superior court validating an issue of bonds by a municipality is conclusive as to the city, its citizens, and every one else, that the city has the legal right to incur a debt of the amount and for the purposes indicated in the notice of the bond election, that the assent of the qualified voters has been obtained for the issuance of the bonds in the manner required by law, and upon all other questions which the constitution and laws require to be determined before authority is conferred upon a municipality to incur a debt.

2. Where, in pursuance of a notice published as required by law, an election has been duly held to determine whether a city shall issue and sell bonds of a given amount for the purpose of erecting an electric-light plant for the use of the city, and bonds of another designated amount for the purpose of improving and enlarging the capacity of its gas-works, and such election has resulted in favor of the issuance of such bonds and they have been duly validated, and subsequently the legislature confers upon such city power and authority to establish, own, and operate electric-light plants and gas-works, for the purpose of supplying the city and its inhabitants with lights, such city may lawfully use an electric-light plant purchased and installed with the proceeds of the sale of the first-mentioned bonds, and its gas-works when improved and enlarged with the proceeds of the sale of the other bonds, not only for the purpose of lighting its streets and public places, but also for the purpose of supplying its inhabitants with light in their homes and places of business.

Argued December 3,—Decided December 13, 1906.

Petition for injunction. Before Judge Fite. Bartow superior court. October 5, 1906.

On September 27, 1906, Thomas H. Baker, as a citizen and

taxpayer of the City of Cartersville, brought an action against that municipality to enjoin it from issuing and selling certain bonds. The petition made the following allegations: The mayor and aldermen of the city, on May 14, 1906, ordered an election to be held on June 16, 1906, to determine whether or not the city should issue its bonds to the amount of $40,000. In pursuance of such order there was duly published a notice of such bond election, in which it was stated that "Said bonds [were] to be issued and sold and the proceeds applied as follows: Twenty-five thousand dollars for the purpose of purchasing and installing an Electric Lighting Plant for said city. Ten thousand dollars for the purpose of improving and enlarging the Water-works Plant belonging to said city, and five thousand dollars for the purpose of improving and increasing the capacity of the City Gas Works." The election resulted in favor of issuing the bonds. On July 14, 1906, the issuance of the bonds was validated by the superior court of Bartow county, according to the provisions of the statute in such cases. The city is advertising for bids for the bonds, and will issue and sell the same unless restrained. It is the purpose and intention of the city to install, with the proceeds of the sale of the bonds, a plant for generating electricity, not only for the purpose of lighting its streets and public buildings, but also for the purpose of furnishing and selling light and power to individuals and corporations, "thereby embarking said city in a manufacturing and commercial enterprise without authority of law." The "notice of the bond election is not sufficient in law to apprise the voters of said city of the purpose of said bond issue, in so far at least as the same refers to the item of twenty-five thousand dollars." "Said notice of bond election specifies that of the proceeds of the sale of said bonds five thousand dollars is to be applied for the purpose of improving and increasing the capacity of the gas-works now owned by said city, but said notice does not specify for what purpose said increased capacity is required; and petitioner charges that it is the purpose of said mayor and aldermen of said city to increase the capacity of said gas-plant, not for the purpose only of lighting the streets and public buildings of said city, but also for the purpose of manufacturing and selling gas to individuals and corporations as a commercial enterprise, without the authority of law, or knowledge and consent of the voters of the city; and petitioner charges that

said notice was not sufficient in law to apprise the voters at said election of the purpose of said bond election, so far, at least, as the same refers to said item of five thousand dollars, and petitioner charges that said mayor and aldermen, without authority of law, are now engaged in the business of manufacturing and selling gas to individuals and corporations, and that the purpose of said mayor and aldermen is to use a portion of the proceeds of the sale of said bonds to still further engage said city in the commercial enterprise of manufacturing and selling gas." The prayer was to enjoin the issuance and sale of any of the bonds hereinbefore mentioned, and to enjoin the city "from embarking on the enterprise of manufacture and sale of electricity or gas, either or both," and for general relief.

The defendant, in its answer, denied any intention of embarking in a commercial enterprise, but alleged that the purpose for which the proceeds of the bonds were to be used was correctly set out in the published notice of the election, and claimed that such purpose included the furnishing of gas and electric lights to the people of the city in their homes and places of business, as well as upon the public streets and in the city's public buildings. The answer further alleged that "It is the purpose of defendant to build and equip said electric-light plant of sufficient capacity to furnish electric light in quantities sufficient for the present needs of the city and its inhabitants; and as the city is growing rapidly, the capacity of the plant will be made such as to supply the growing necessities of the city and its inhabitants for light on the streets and in their homes and places of business."

The judge, upon the verified petition and answer, refused an injunction, and the plaintiff excepted.

*Thomas W. Milner & Sons* and *G. H. Aubrey,* for plaintiff.

*James M. Neel* and *John H. Wikle,* for defendant.

FISH, C. J. (After stating the facts.) 1. The judgment of the superior court validating the bonds is conclusive as to the city, its citizens, and every one else, that the city has the the legal right to incur a debt of the amount and for the purposes indicated in the notice of the bond election, and that the assent of the qualified voters has been obtained for the issuance of the bonds in the manner required by law, and upon all other questions which the constitution and laws require to be determined before authority is con-

ferred upon a municipality to incur a debt. *Epping* v. *Columbus,* 117 *Ga.* 280; *Rountree* v. *Rentz,* 119 *Ga.* 885. It is beyond question, therefore, that the city has the legal right to issue and sell twenty-five thousand dollars of bonds and with the proceeds thereof to purchase and install an electric-lighting plant for the city, and to issue and sell five thousand dollars of bonds for the purpose of improving and increasing the capacity of the city gas-works. There was no insistence on the point that the city has no right to sell and dispose of the proceeds of the ten thousand dollars of waterworks bonds; nor is there any question as to the right of the city to issue and sell the bonds in question for the purpose of erecting and maintaining an electric-light plant and for the purpose of improving and increasing the capacity of the gas-works, for the manufacture of electricity and gas to be used in lighting the streets and public places of the city. The controlling question is whether the bonds can be issued and sold and the proceeds used for the erection and maintenance of a plant to generate electricity and for the improvement and enlargement of the capacity of the gas-works, for the manufacture of electricity and gas to be used, not only in lighting the streets and public places of the city, but also in furnishing to its citizens light in their homes and places of business.

2. In view of the fact that it appeared from the allegations of the petition that the city was already engaged in furnishing its citizens with gas from its gas-works, and, according to the answer, had long been engaged in doing so, it may be that the citizens must have understood, from the notice of the election, that the city would continue to furnish its citizens with gas from such works after they should be improved and their capacity increased by the use of the money for which the debt of five thousand dollars was to be incurred. It may be also, that, according to the great weight of modern adjudicated cases, we would be authorized in holding that as the city, under the notice given of the purposes for which the proceeds of the bonds were to be used, had, after the bonds were validated, a general power to establish and maintain an electric-light plant and to improve and enlarge its gas-works, it might therefore erect and maintain such plant and improve and maintain such works, not only for the purpose of furnishing light for the streets and public places of the city, but also to its inhabitants in their homes and places of business. Mr. Tiedeman, in his work

on Municipal Corporations, says: "Involved in the question of the constitutionality of municipal ownership of gas, electric light, and waterworks, are two distinct queries: *first,* can the municipal corporation supply itself with the light and water which it may need for lighting and cleansing the streets and other strictly municipal property; and, *secondly,* can it vend to private consumers the light and water they may need? In regard to the first query, there is little room for doubt, and the cases are unanimous, that the municipal corporation may, if the State legislature grants the power, supply itself, for public needs, with light and water, by the establishment and operation of its own works, as well as by contract with private manufacturers of the same. Where the municipality undertakes, as it always does when it establishes and operates its own lighting or waterworks, to supply private consumers in their private houses, the municipal government is without doubt engaged in a private business, which fifty years ago would very likely have been conceded to be beyond the legitimate sphere even of a municipal corporation, and this has been the judgment of the Supreme Court of South Carolina in a very late case. [Mauldin *v.* Greenville, 33 S. C. 1.] But in every other case, where the question has been raised, the courts have held that the vending of light and water to private consumers was but an incident of the supply of these elements for strictly public use, and was within the constitutional limitations." Tiedeman on Mun. Corp. § 144, p. 254; Beach, Public Corp. § 560; Thomson-Houston Electric Co. *v.* Newton, 42 Fed. Rep. 723; City of Crawfordsville *v.* Graden, 130 Ind. 149; Faucett *v.* Mt. Airy, 134 N. C. 125; Jacksonville Electric Light Co. *v.* Jacksonville, 36 Fla. 229; Smith *v.* Nashville, 88 Tenn. 464. In line with the South Carolina case above cited by Tiedeman is Crisensen *v.* Fremont, 45 Nebr. 160. We do not, however, deem it necessary, in the case in hand, to follow those authorities which hold that the vending of light and water to private consumers is but an incident of supplying the same for the city's own uses, nor to put our ruling on the reasons above indicated, as it may be safely based on the amended charter of the City of Cartersville, approved August 1, 1906. Acts 1906, p. 590. Section 64 of that charter provides, "That the City of Cartersville . . shall have power and authority to establish, own, maintain, and operate a system of waterworks, electric-light plants, gas-works

and sewerage system, or any of them, for the purpose of supplying its inhabitants and the city, as well as consumers generally, within said city and its suburbs, water, lights, electricity, or gas, for power purposes, sewerage, or any of them, and the mayor and aldermen of said city shall have the power to do any and all things necessary for such purposes," etc.    Here is express authority for the City of Cartersville to establish and operate electric-light plants and gas-works for the purpose of supplying its citizens with electricity and gas; and there can be no doubt, we apprehend, of the power of the legislature to grant such authority to the city.    See cases cited in Tiedeman on Municipal Corporations, § 144a, p. 254, note 2.    Of course, we do not mean to hold that where a city has voted to incur a debt by the issuance of bonds for a specific purpose, and the bonds have been validated, they can be issued and sold and the proceeds converted and misapplied to some other distinct purpose.    The judgment validating the bonds in the present case conclusively authorized the city to erect and maintain an electric-light plant and to improve and increase the capacity of its gas-works, and the city can lawfully incur the debt, by the sale of the bonds, for such purposes.    The legislature, in the first instance, could have conferred upon the city the charter right to furnish electricity and gas to its citizens, and there is no reason why it could not, subsequently to the validation of the bonds, confer the power by an amendment to its charter.    We do not see how furnishing light to its citizens from the plants the city is authorized by the legislature to operate is a conversion of the proceeds of the sale of the bonds issued for the purpose of erecting or enlarging and improving the plants.    Plaintiff in error insists that the authority given by the amended charter "can not be invoked for the purpose of legalizing an illegal act done under the old charter, nor can a municipal debt be created by act of the legislature, but must be by vote of the people;" and further, that retroactive legislation is forbidden by the constitution. We think it clear that no illegal act, in any view of the question, was done under the old charter, nor is there any attempt in the amended charter to create a debt for the city; nor can we understand how the section in question of the amended charter can be considered retroactive legislation.

As the defendant, in its answer, denied that it intended to furnish electricity to its citizens for any other than lighting purposes,

we take it that the court decided, as matter of fact, that the city did not intend to embark into the alleged commercial enterprise of furnishing electricity for power purposes. The court did not err in refusing the injunction.

*Judgment affirmed. All the Justices concur.*