## LIPPITT *et al.* v. CITY OF ALBANY *et al.*

1. Properly construed, the purpose of the act of 1897 (Acts 1897, p. 82) was to provide a method by which it should be judicially investigated and determined whether the law, constitutional and statutory, has been complied with, so as to declare the bonds referred to therein valid before their issuance. It was, therefore, not violative of art. 7, sec. 7, par. 1, of the constitution (Civil Code, § 5893), on the ground that it sought to confer power on counties, municipalities, and divisions to incur debts without the consent of two thirds of the voters thereof, by attempting to authorize a confirmation and issuance of bonds which may not have been authorized by the necessary two-thirds vote.

2. The act referred to in the preceding headnote is not unconstitutional on the ground that it makes no provision for a trial by jury in reference to the matters for the investigation of which provision is therein made.

3. That act is not unconstitutional on the ground that it seeks to deprive the citizens of a municipality of their property without due process of law, by excluding future investigation in reference to the validity of the bonds after judgment of confirmation and validation.

4. Whether or not the 8th section of the act of 1897 contains a different subject-matter from that included in the general body of the act, and beyond the purview of the caption thereof, the act as a whole is not unconstitutional on that ground. If the 8th section should be held invalid, it is not so essential a part of the general purpose of the act that its elimination would destroy the legislative scheme, and invalidate the act in its entirety.

5. The pleadings in the proceeding to validate the bonds were not lacking in any such essential jurisdictional allegations under the act as to render the entire proceeding void. If there were any lack of explicitness of statement in reference to certain matters, such as the manner of holding the election and submitting the issue to the voters, on objection in the nature of special demurrer, this should have been urged in the same proceeding before the judgment of validation, and not raised for the first time by an equitable petition seeking to enjoin the issue of the bonds.

6. (*a*) Where a municipal corporation desired to issue bonds, and, after an election held for the purpose of determining whether it should be done, a regular proceeding to investigate their validity was had in accordance with the act of 1897, and judgment of validation and confirmation was duly rendered, after service and notice as by that act provided the judgment so rendered was conclusive upon the municipality and its citizens that the bonds were valid, and they could not thereafter be declared invalid and their issuance enjoined on the ground of insufficiency in the provisions of the ordinance passed in reference to holding the election, or that the issue was not submitted to the voters with proper definiteness, or like reasons.

(*b*) No question is here raised as to any lack of provision having been made, before the issuance of the bonds, for their payment; and therefore the ruling above made does not deal with that subject.

7. There was no error in refusing to grant an interlocutory injunction.

Argued July 6,—Decided December 1, 1908.

Petition for injunction. Before Judge Spence. Dougherty superior court. May 29, 1908.

*Pope & Bennet,* for plaintiffs.

*James Tift Mann,* for defendants.

ATKINSON, J.  Lippitt et al. filed their equitable petition against the City of Albany and its mayor and council, seeking to enjoin them from issuing certain bonds, as to which an election had been held, and which had been validated under the act of 1897, or taking any steps for that purpose. On the hearing of the application for interlocutory injunction it was refused, and the plaintiffs excepted. The grounds on which the injunction was sought may be divided into two classes: (1) Those which attacked the constitutionality of the act of 1897, providing for the validation of bonds of counties, municipalities, or divisions (Acts 1897, p. 82). (2) Those which attacked the proceedings under which the bonds were validated, either for alleged insufficiency in the pleadings or proceedings themselves, or on account of antecedent irregularities in regard to the mode of submission of the issue to the voters, and the like. The attacks made upon the act of 1897 are numerous and vigorous, but, we think, are not sufficient, either jointly or severally, to demonstrate its unconstitutionality.

1. Some of the grounds assert unconstitutionality in the act referred to, on the contention that it seeks to confer power on counties and municipalities to incur debts without the consent of two thirds of the voters thereof, by attempting to confirm and authorize an issue of bonds which may not have been authorized by the

necessary two-thirds vote; and that the act seeks to rise superior to the constitution and preclude inquiry into the validity of the bonds on such a constitutional ground, thus violating art. 7, sec. 7, par. 1, of the constitution of the State of Georgia (Civil Code, § 5893). This contention is based on a misconception of the purpose of the act of 1897. It was not the purpose to validate invalid or irregular bonds. An intent to violate the constitution will not be attributed to the legislature, unless it is plain. The act of 1897 was not passed for the purpose of authorizing a court to empower a municipality or county to issue illegal bonds. On the contrary, its object was to provide a method by which it could be judicially investigated and determined whether the law, constitutional and statutory, has been complied with as to elections thereafter held, and whether in law and in fact the bonds were valid; and to pass proper judgment upon that subject, after full consideration, before the bonds were floated or sold, and passed into the hands of innocent purchasers. It was not intended that any judge should validate bonds as a mere matter of course, or without due and proper investigation and consideration for the purpose of ascertaining whether the law had been complied with. It is his duty so to investigate; and no judge should validate an issue of bonds, and declare by his judgment of validation that the requirements of the law have been met, without first ascertaining that such is the fact. The act contemplates a real investigation and determination, not a mere pro forma declaration. Such being the purpose of the act, it does not violate the constitution for the reason assigned. We must presume that in this validating proceeding the presiding judge properly performed the duties imposed upon him.

2. It is contended that the act is unconstitutional because it makes no provision for a trial by jury, and therefore that it violates art. 6, sec. 18, par. 1, of the constitution of Georgia (Civil Code, § 5876). The constitution declares that "The right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate." But the preservation of the right "inviolate" did not operate to confer a right of trial by jury in all proceedings of whatsoever character, where no such right had ever existed. The case of *DeLamar* v. *Dollar*, 128 *Ga.* 57 (57 S. E. 85), is relied on in support of the contention here made; but a

careful reading of the opinion will show that it does not have that effect. Presiding Justice Cobb, who delivered the opinion, was careful to guard it against such misapplication. Thus he said (p. 61) : "The expression 'common-law cases,' or similar language, which has been heretofore used, or may be used in the further progress of this opinion, is intended to embrace only cases which were the subject of real, personal, or mixed actions, according to the practice of the English common-law courts, and not those proceedings which were not known to the common law, and are only authorized under our statutes, such as possessory warrants and the like." And again he said (p. 66) : "It must be kept in mind that the foregoing discussion is limited, in its application, to common-law cases of a civil nature. It is now settled by more than one decision, concurred in by six Justices, that it is within the power of the General Assembly to deprive a party of the right of trial by jury in equity cases. Whether there shall be such trial, in cases of this character, is within the discretion of the General Assembly." See also *Bemis* v. *Armour Packing Company,* 105 *Ga.* 293 (31 S. E. 173) ; *Austin* v. *Southern Home Asso.,* 122 *Ga.* 448 (50 S. E. 382). In a proceeding to validate bonds, no judgment for money or land is entered against the present complainants or any other citizens or taxpayers; no direct judgment for immediate recovery of money is even entered against the municipality. The proceeding is not one of the class, either in terms or by analogy, in which jury trials have ever existed as matter of right; and it does not fall within the constitutional provision above quoted. It is a statutory method provided for investigating and determining whether the law has been complied with in reference to the conditions requisite to making the bonds valid before they are issued, rather than to allow them to be issued and remain indefinitely subject to attack, leaving open the question of whether there had been a compliance with the law in regard to the election, the amount of the indebtedness, and other similar matters, for determination at some time when possibly much of the evidence may have been lost or destroyed. If it be sought to analogize such a proceeding to a common-law suit or to an equitable action, it would more nearly approximate the latter. See, on the subject generally, *Freeman* v. *State,* 72 *Ga.* 812 ; *Pearson* v. *Wimbish,* 124 *Ga.* 701 (52 S. E. 751).

3. There is no merit in the contention that the act is in violation of art. 1, sec. 1, par. 3, of the constitution (Civil Code, §5700), in that it attempts to deprive the citizens of the municipality of their property without due process of law, on the ground that the judgment of validation deprives them of the right to ever question the validity of the bonds, although they were not parties to the proceedings in which such judgment was rendered, and not served personally, or given a reasonable opportunity to know of the pendency of the proceedings. The act requires notice to be given to the solicitor-general of the circuit, who is required by law to institute a proceeding to which the city is a direct party, and which is called upon to show cause why an indebtedness which it is about to incur by the issue of the bonds should not be investigated and its legality determined in advance of the sale of such bonds. Publication, in the nature of citation, is provided for, giving notice to the public that on the day specified in the order for a hearing the proceeding will be heard. Any citizen residing in the municipality may become a party to the proceeding, may contest the proposed validation, and if dissatisfied with the judgment, may except thereto. This includes the essential elements of a court where a hearing may be had of a proceeding instituted by the solicitor-general, of direct service upon the municipal corporation which proposes to issue the bonds, of notice to the citizens of such city by publication in a newspaper at least twice before the time of the hearing, of an opportunity for any of them who so desire to become parties to the proceeding, and to contest the proposed validation. It is argued that the law only provides for publication twice, and that this does not give sufficient notice. We can not say that the legislative discretion as to the extent of the notice has been so arbitrarily used as to make the act unconstitutional. In this connection it may be noted that the character of the act under consideration itself involves some notoriety. The municipal council must act; an election must be advertised and held; the result must be declared; and the public law requiring the institution of validating proceedings is presumably known. Doubtless these things were considered by the General Assembly in determining what additional publication was necessary in order to give the citizens notice of the time of hearing. It can not

be said that this act of the legislature deprives a citizen of property without due process of law.

4.  It is urged that the act of 1897 is in conflict with art. 3, sec. 7, par. 8, of the constitution (Civil Code, §5771), which declares that "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." This contention is based upon section 8 of the act, which declared that where an election had already been held before its passage, but bonds had not been issued or disposed of, the county, municipality, or division might proceed to issue them, and their validity should not be inquired into by any court unless a proceeding for that purpose should be brought within thirty days from the passage of the act. The title was as follows: "An act to provide for the confirming and validating of all bonds which may hereafter be issued for counties, municipalities, or divisions, under paragraphs 1 and 2, section 7, article 7 of the constitution of 1877, and for other purposes." It is unnecessary to determine whether section 8 of the act is invalid because not covered by the caption, or because it introduces a different subject-matter from the general body of such act. The caption does not include two subject-matters, or provide for an act which as a whole shall do so. If, therefore, the provisions of section 8 should be deemed to deal with a distinct and different subject-matter from that dealt with in the remainder of the act, it would not be covered by the caption, so that the caption would be single in purpose and would cover the remainder of the act, while a provision not covered by it would be unconstitutional—a mere void excrescence which might be lopped off without affecting the law as a whole. If it should be held that the subject-matter of section 8 was not different and distinct from the subject-matter of the remainder of the act, but was a part of one whole subject-matter, then of course the entire objection would fall. This case is not dependent upon the validity of that section. The proceeding to validate is not affected by it, but is under the general body of the act. If it should be conceded that the 8th section is not covered by the caption, but introduces matter foreign to it, and that the act to that extent is unconstitutional, it would not necessitate a declaration that the entire act is invalid. The rule is, that if an act in its general scope is constitutional, but some distinct part or

provision is unconstitutional, and this can be eliminated without affecting the legislative intent and purpose, the unconstitutional part will be so declared, but the remainder of the act will be allowed to stand; but if the unconstitutional portion of the act is so intimately connected with or interwoven in the entire act that its elimination, and leaving the remainder of the act to stand, would not carry out the legislative purpose or intent, then the whole act would fall with the unconstitutional portion of it. Here the general purpose and scope of the act is to provide for the confirmation and validation of bonds, which may be issued by counties, municipalities, and divisions, after its passage. All the other sections have reference to calling and holding elections in the future and to the validation of bonds authorized by such elections. Section 8 alone referred to elections which had already been held prior to the passage of the act, but under which bonds had not been issued, and prescribed a period of limitation for attacking them. If this section should be eliminated altogether from the act, it would not at all destroy or impair the general legislative purpose and intent as to the validation of bonds under elections thereafter held. If, therefore, this section were conceded to be unconstitutional, it would not destroy the constitutionality of the entire act.

5. It was contended that the pleadings in the validating proceeding were not sufficiently full and specific on certain points. For instance, it was urged that the notice served upon the solicitor-general did not contain an allegation that the municipal corporation was "desiring to incur any bonded debt," etc., or any request that the solicitor-general file any proceedings to ascertain the validity of the bonds. There is nothing in the law requiring that the notice should contain these things.

Another objection set up to the pleadings in the validating proceeding was that the answer of the city, to the petition filed by the solicitor-general, stated in one place that all the requirements of the law relative to calling, ordering, and holding the election, mentioned in the petition, were fully complied with, and, in another place, that the entire indebtedness of the city, including the amount for which the bonds were to be issued, did not exceed 7 per centum of the assessed value of all the taxable property in said city; and that these were allegations of conclusions, and did not state the facts with sufficient definiteness. If there was any merit in

the objection, it should have been made in the validating proceedings in the nature of a special demurrer. There were other similar objections to the pleadings and procedure validating the bonds. None of them were such as to show that such proceeding and the judgment of validation were void.

6. In the present equitable petition it was sought to set up various reasons why the judgment of validation should not have been passed. These referred to the sufficiency of the provisions of the ordinance in regard to the holding of the election, whether the mode of submitting the question of issuing bonds for municipal purposes sufficiently described the objects for which the bonds were to be used, and afforded proper opportunity for voters to vote on the bonds for these objects separately, and one or two other alleged irregularities. The act of 1897 would be of little service if the proceedings to validate the bonds, followed by an investigation as to whether all the prerequisites of the law had been complied with in order to render the bonds valid, and terminating with a judgment of validation, should conclude nothing, and leave the whole subject open to reinvestigation at any time by any citizen. Matters of the character here urged, if meritorious, should have been set up in the validating proceedings. It is too late, after judgment of validation, to disregard it, and seek to enjoin the issuance of the bonds on account of such objections. It has been held several times by this court that the judgment of a superior court validating an issue of bonds by a municipality is conclusive as to the city and its citizens on objections of this character. *Epping* v. *Columbus,* 117 *Ga.* 263, 280 (43 S. E. 803); *Rountree* v. *Rentz,* 119 *Ga.* 885 (47 S. E. 328); *Woodall* v. *Adel,* 122 *Ga.* 301 (50 S. E. 102); *Baker* v. *Cartersville,* 127 *Ga.* 221 (56 S. E. 249). In *Rea* v. *LaFayette,* 130 *Ga.* 771 (61 S. E. 707), the point that the question of issuing bonds for different municipal purposes should have been submitted separately was raised in proceedings to validate the bonds. No question is here raised as to any lack of provision having been made before the issuance for the payment of the bonds; and therefore the ruling on that subject in *Woodall* v. *Adel,* supra, is not applicable.

7. In view of what has been said, it follows that there was no error in refusing to grant the interlocutory injunction prayed.

*Judgment affirmed. All the Justices concur.*