### CROWELL *et al. v.* AKIN *et al.*

1. The sixteenth section of the act of the General Assembly approved August 21, 1917 (Acts 1917, p. 108), known as the " land-registration act," is not violative of the due-process-of-law clauses of the State and Federal constitutions, in that the preliminary examination by the examiner is ex parte and before the parties adversely interested are brought into the proceeding, or in that the preliminary report of the examiner is declared to be " prima facie evidence of the contents thereof," such report not being binding upon the court or conclusive upon the parties adversely interested in the proceeding. The intent of the preliminary report is to furnish to the court and to the parties any information likely to affect the title or the possession, and so that any person interested in or likely to be interested in the result of the suit may be notified. Nor is section 20 of the act violative of the due-process-of-law clauses of the State and Federal constitutions, upon the ground that the section provides for the independent examination of the title by the examiner and for the submission by him of a final report based upon such findings, which shall be taken as prima facie true, such report not being conclusive upon the parties nor binding upon the court until after trial by jury upon exceptions of fact filed thereto.

2. The act is not violative of the guaranty of the State constitution, that " the right of trial by jury  .   .   shall remain inviolate;" the act and the 20th section thereof expressly providing for trial by jury as a matter of right, upon demand, upon any issues of fact arising upon exceptions to the auditor's report filed by any party to the proceeding. The provisions of the act relating to the trial by jury, upon demand, of issues of fact arising upon exceptions to the examiner's report, which is to be taken as prima facie true, and restricting the hearing to the

evidence reported by the examiner (except as otherwise provided in the act), are not unconstitutional limitations of the right of trial by jury.

3. The act is not unconstitutional because it confers upon the judge of the superior court the right to render judgment without the verdict of a jury in a civil case other than one founded on an unconditional contract in writing where no issuable defense is filed on oath.

4. The act is not violative of article 3, section 7, paragraph 8, of the constitution of this State (Civil Code of 1910, § 6437) which declares: "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof."

No. 2323. SEPTEMBER 26, 1921.

Injunction. Before Judge Highsmith. Wayne superior court. October 12, 1920.

*J. L. Sweat,* for plaintiffs in error.

*Bennet, Twitty & Reese, Walter McElreath, D. M. Clark, J. R. Thomas, J. C. McDonald, R. L. Bennett, C. B. Conyers, Gibbs & Turner,* and *Wilson & Bennett,* contra.

Brief by *A. G. Powell,* amicus curiæ.

BECK, P. J. On April 13, 1920, Thacher R. C. Crowell, Calvin D. Christ, and Calvin C. Walkling filed their petition in Wayne superior court, to have their title to 72 tracts of land, containing one thousand acres each, more or less, and eight lots containing 490 acres each, more or less, as therein described, situated, lying, and being in Wayne County, Georgia, and known as "the Williams survey lands," registered under the "land-registration act." The defendants named in the proceeding, together with all parties in possession over 14 years of age, were served by the sheriff or his deputy, and the lands were duly posted by the sheriff. Copies of the petition and process were mailed by the clerk to all non-resident adverse claimants, and notice of the proceeding was duly published "to all whom it may concern," as provided in the act. The time within which adverse claimants might appear and assert their claims was enlarged from time to time by proper orders of the court, and had not expired when, on August 23, 1920, L. R. Akin and 35 other persons filed in Wayne superior court their petition against the applicants in the registration proceeding, to enjoin that proceeding, upon the ground that the land-registration act is unconstitutional for the reasons set forth in their petition. The petition for injunction alleged that each of the plaintiffs "is in

possession of some part of the vast acreage involved in said petition for registration, and claims title thereto adversely to the claim of title asserted by the defendants herein." To the petition · for injunction the defendants demurred and answered. Upon the interlocutory hearing the court took the matter under advisement, and subsequently, on October 21, 1920, passed an order granting the injunction as prayed. To this judgment the defendants excepted. The bill of exceptions recites: "Upon the hearing, it was admitted upon the part of the plaintiffs in the petition for injunction, that, if the land registration act was constitutional, then plaintiffs were not entitled to an injunction." The plaintiffs' contentions, as summarized in the brief of counsel filed in their behalf, and in the order in which we will consider them, are:

"1. The scheme of the act, with reference to the examiner's preliminary report and the findings of fact incorporated therein, is violative of the 'due-process-of-law' provisions of the State and United States constitutions. This is true, too, of the scheme of the act with respect to the examiner's findings of fact incorporated in his final report.

"2. The act is violative of the guaranty of the State constitution, that 'the right of trial by jury . . shall remain inviolate.' [Art. 6, sec. 18, par. 1; Civil Code of 1910, § 6545].

"3. The act is unconstitutional, because it confers upon the judge of the superior court the right to render judgment without the verdict of a jury in a civil case other than one founded on an unconditional contract in writing where no issuable defense is filed under oath. [Art. 6, sec. 4, par. 7; Civil Code of 1910, § 5660.]

"4. The act is unconstitutional, because it refers to more than one subject-matter, and because it contains matter different from what is expressed in its title." (Art. 3, sec. 7, par. 8; Civil Code, § 6437.)

The act of the General Assembly approved August 21, 1917 (Acts 1917, p. 108), known as the "land registration act," is an adaptation of the Torrens system to the constitution and laws of this State. It follows closely, though differing in some particulars, the registration acts of a number of other States, among them, Illinois (Laws 1897, pp. 141, 165; Laws 1903, pp. 121-

123); California (Statutes 1897, c. 110, pp. 138-167; General Laws, pp. 1219-1257; Statutes 1915, pp. 1932-1951); Massachusetts (Acts 1898, pp. 682-722; Revised Laws 1901, c. 128); Minnesota (General Laws, pp. 348-378); Oregon (General Laws 1901, pp. 438-467); Colorado (Laws 1903, pp. 311-352; Rev. Stat. 1908, pp. 334-355); Washington (Session Laws 1907, pp. 693-738); New York (Laws 1908, pp. 1247-1283; Consolidated Laws 1909, pp. 3459-3496; Laws 1910, c. 627); North Carolina (Acts 1913, pp. 147-159); Mississippi (Laws 1913, pp. 158-175); Ohio (Laws 1913, pp. 914-960); Nebraska (Laws 1915, pp. 494-526) Virginia (Acts 1916, c. 62, p. 70); South Carolina (Acts 1916, p. 942). The Illinois act of 1895 (Laws 1895, p. 107) — perhaps the earliest registration act in the United States — was declared unconstitutional upon the ground that there was a delegation of judicial powers in violation of the constitution of that State. People v. Chase, 165 Ill. 527 (46 N. E. 454, 36 L. R. A. 105). The Ohio act of 1896 was held unconstitutional by the Supreme Court of that State, upon substantially the same ground, and upon the ground that the act violated the due course of law guaranteed by the Ohio bill of rights, in that it provided for inadequate service, especially upon known adverse claimants residing in the State, and upon the further ground that it attempted to authorize the taking of private property for uses not public, without compensation. See State v. Gilbert, 56 Ohio St. 575 (47 N. E. 551; 38 L. R. A. 519, 60 Am. St. R. 756). In 1897, as noted above, the legislature of Illinois passed a similar law designed to meet the constitutional tests fixed by the Supreme Court in the Chase case; and the court sustained the latter act, in People v. Simon, 176 Ill. 165 (52 N. E. 910, 44 L. R. A. 801, 68 Am. St. R. 175). In 1913, after an amendment to the constitution of Ohio, a registration act was passed which was held not to be objectionable. With the exceptions noted, the validity of land-registration acts have been uniformly upheld. See Tyler v. Judges, 175 Mass. 71 (55 N. E. 812, 51 L. R. A. 433); Robinson v. Kerrigan, 151 Cal. 40 (90 Pac. 129, 121 Am. St. R. 90); State v. Westfall, 85 Minn. 437 (89 N. W. 175, 57 L. R. A. 297, 89 Am. St. R. 571); Peters v. Duluth, 119 Minn. 96 (137 N. W. 390, 41 L. R. A. (N. S.) 1044); People v. Crissman, 41 Colo. 450 (92 Pac. 949).

9

The subject is fully annotated in L. R. A. 1916D, 14. The Supreme Court of the United States, in American Land Co. *v.* Zeiss, 219 U. S. 47, 31 Sup. Ct. 200, 55 L. ed. 82), upheld an act resting upon the same constitutional basis as the land-registration acts.

The object of the land-registration acts will be further noticed .in a subsequent division of this opinion; but it will be helpful to call attention at this point to some of the essentials of title to land nowhere to be discovered of record under the system of evidencing title heretofore existing in this State. Among these ·were: the genuineness of signatures of grantors and of attesting witnesses in recorded deeds; jurisdiction and authority of official witnesses; status and identity of persons professing to be ,heirs at law; full age of grantors and donees; sanity; the fact and validity of marriage and of divorce; prescription; adverse possession; the power and authority of corporate officers; the validity of tax deeds (depending upon whether the levy was excessive, etc.). Other illustrations might be given. The land-registration act is therefore a remedial statute and should be liberally construed " according to its intent, ' so as to advance the remedy and repress the evil,' " as said by the Supreme Court of North Carolina in Cape Lookout *v.* Gold, 167 N. C. 63 (83 S. E. 3). It is unnecessary to set out at length the act under consideration. We will notice only the provisions of the act necessary to a determination of the precise questions made in the present case.

A suit for registration of title is commenced by petition by the applicant " against the world " as well as against the land in rem. " All persons who by the petition are disclosed to have any ·lien, interest,. equity or claims, adverse to the petitioner or otherwise, vested or contingent, upon said land or any interest therein," and all other persons " whom it may concern," are defendants in the proceeding. All known defendants resident in the 'State must be served as in ordinary actions. Service by publication is provided on adverse non-resident and unknown claimants. Jurisdiction in rem is obtained by the sheriff going on the land and posting a notice thereon, and by service of notice upon every occupant of the land above the age of fourteen years. Powell on Land-Registration, § 15. Section 16 of the act provides: " Upon the filing of a petition, as provided in this act,

the clerk shall at once notify the judge, who shall refer the cause to one of the general examiners or to a special examiner. It shall thereupon become the duty of such examiner to make up a preliminary report containing an abstract of the title to the land, from public records and all other evidences of a trustworthy nature that can reasonably be obtained by him, which said abstract shall contain full enough extracts from the records, and other matters referred to therein, to enable the court to decide the questions involved; also a statement of the facts relating to the possession of the lands, also containing the names and addresses, so far as he is able to ascertain, of all persons interested in the land as well as all adjoining owners, showing their several apparent or possible interests, and indicating upon whom and in what manner process should be served or notices given, in accordance with the provisions of this act. The preliminary report of the examiner shall be filed in the office of the clerk of the superior court, on or before the return day of the court, as stated in the process, unless the time for filing the same shall be extended by the court; and the said report shall be prima facie evidence of the contents thereof." If the preliminary report of the examiner discloses that other persons than those who shall have been notified are entitled to notice, provision is made in the 17th section of the act for service of a copy of the petition upon such persons. By the eighteenth section of the act any person, whether notified or not, may become a party to the proceeding, may file objections to the granting of the relief prayed, or any part thereof, by answer asserting some interest in the premises and the grounds of his objection, or he may file a cross-action praying that the title to the land or some interest therein be decreed to be in him and registered accordingly. The nineteenth section requires the examiner to hear evidence and make his final report to the court, after notice of the time and place of hearing as therein provided. The twentieth section of the act is as follows: "At the time and place set for the hearing the examiner shall, in like manner as other auditors or masters in chancery, proceed with similar powers as to the compelling of the attendance of witnesses, the production of books and papers, and of adjournment and recessing to hear all lawful evidences submitted. In addition thereto he is empowered to make

such independent examination of the title as he may deem necessary. Upon his request the clerk shall issue commission for the taking of testimony of such witnesses as, under the provisions of law on that subject, may have their testimony taken by interrogatories in ordinary actions. He shall also have the powers of a commissioner appointed by the superior court under sections 5910 to 5917, inclusive, of the Civil Code of 1910. Within fifteen days after such hearing shall have been concluded the examiner, unless for good cause the time shall be extended by the judge, shall file with the clerk a report of his conclusions of law and of fact, setting forth the state of the title, and liens or encumbrances thereon, by whom held, the amounts due thereon, together with the abstract of title to said land, and any other information affecting its validity, and a brief or a stenographic report of the evidence taken by him. He shall mail to each of the parties who have appeared in the cause notice of the filing of his report. Any of the parties to the proceeding may, within twenty days after such report is filed, file exceptions to the conclusions of law or of fact or to the general findings of the examiner. The clerk shall thereupon notify the judge that the record is ready for his determination. If the petitioner, or any contestant of petitioner's right, shall demand a trial by jury upon any issue of fact arising upon exceptions to the examiner's report, the court shall cause the same to be referred to a jury, either at the term of court which may then be in session or at the next term of the court, or at any succeeding term of the court, to which the case may be continued for good and lawful reasons; but it shall be the duty of the judge to expedite the hearing of the case, and not to continue it unless for good cause shown, or upon the consent of all parties at interest. The issue or issues of fact shall be tried before the jury, in the event jury trial is requested, upon the evidence reported by the examiner, except in cases where, under the provisions of law in this State, evidence other than that reported by the auditor may be submitted to the jury on exceptions to an auditor's report; and except, further, that in the case the examiner has reported to the court findings of fact based on his personal examination, either party may introduce additional testimony as to such facts, provided that he will make it appear, under oath, that he has not

been fully heard and given full opportunity to present testimony on the same matter before the examiner. The verdict of the jury upon the questions of fact shall operate to the same extent as it would in the case of exceptions to an auditor's report in an ordinary case in equity. In all matters not otherwise provided for, the procedure upon the examiner's report and the exceptions thereto shall be in accordance with procedure prevailing in this State as to auditor's reports in equity and exceptions thereto. The right to grant a new trial upon any issue submitted to a jury, and right of exception to the Supreme Court, are preserved. The judge may rerefer or recommit the record to the examiner in like manner as auditor's reports may be recommitted in any equity cause; or he may, on his own motion, recommit it to the same or any other examiner for further information and report."

The preliminary report of the examiner is to be made upon information gathered by the examiner from his own investigations of the public records, and from all other evidence of a trustworthy nature that can be reasonably obtained by him, without notice and an opportunity to the parties to be heard, and the preliminary report is made " prima facie evidence of the contents thereof." Section 20 of the act contemplates that the independent findings of the examiner may be incorporated in his final report and the independent findings of the examiner as reported by him are to be taken as prima facie true. This is said to offend the due-process-of-law clauses of both the State and Federal constitutions. It is said that this is against the law of the land. Returns, reports, and certificates of sworn public officers have in many instances been declared to be prima facie evidence of the facts to which such returns, reports, and certificates relate. One example will suffice: Under the Civil Code (1910), § 5170, the burden of proof in a claim case is " upon the plaintiff in execution, in all cases where the property levied on is, at the time of levy, not in the possession of the defendant in execution." Where the entry of levy made by the officer recites that the defendant in execution was in possession of the property at the time of the levy, the recital is prima facie true and determines the burden of proof. *Burt* v. *Rubley,* 113 *Ga.* 1144 (39 S. E. 409). Though possession of and title

to land are involved, the rule of evidence is undoubtedly within the power of the legislature. See *Vance* v. *State,* 128 *Ga.* 661 (57 S. E. 889). The provisions of section 16 of the act are considered by Judge Powell in his work on "Land Registration" in sections 80-87, inclusive. The purpose of the preliminary report, and how far it is prima facie evidence of the "contents thereof," are pointed out. The provisions of section 20 of the act relating to the functions and duties of the examiner on the hearing, and to the special powers of the examiner, are considered by the author in sections 89-95, inclusive. As said above, it is within the power of the legislature to make the report of a sworn public officer prima facie evidence of the facts to which the report relates, so far as it relates to facts within the scope of the officer's duties. Considering the further provision of the act contained in section 21, that "no judgment or decree shall be rendered by default, so as to authorize any decree to be rendered without the necessary facts being shown," sections 16 and 20 of the act, providing for and making the independent findings of the examiner prima facie evidence of the truth of the facts therein asserted, are not violative of the due-process-of-law clause of the State or Federal constitution. The special duties and powers of the examiner in this respect must be regarded as affording not only due process of law but ample process. The application to register title under the act must proceed upon inquiry; the findings of the examiner are not conclusive; and final judgment can be rendered only after trial. See *People* *v.* *Crisman, supra.*

This brings us to a consideration of the second ground of attack on the act. Article 6, section 18, paragraph 1, of the constitution of this State (Civil Code (1910), § 6545) declares that "the right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate." This provision is uniformly construed as not conferring a right to trial by jury in all classes of cases, but merely as guaranteeing the continuance of the right unchanged as it existed either at common law or by statute in the particular State at the time of the adoption of the constitution. 24 Cyc. 101. Prior to the constitution certain classes of cases were triable without a jury. All cases triable without a jury prior to the adoption of the

constitution may still be so tried. It will be conceded that it is competent for the legislature to provide for a trial without a jury in cases similar to those in which such a trial was in use prior to the adoption of the constitution. Copp v. Henniker, 55 N. H. 179, 20 Am. R. 194; *Tift* v. *Griffin,* 5 *Ga.* 185. The constitutional guaranty of jury trial does not apply to cases in equity. *Mahan* v. *Cavender,* 77 *Ga.* 118; *Poullain* v. *Brown,* 80 *Ga.* 27 (5 S. E. 107); *Mackenzie* v. *Flannery,* 90 *Ga.* 590 (16 S. E. 710); *Bemis* v. *Armour Packing Co.,* 105 *Ga.* 293 (31 S. E. 173). In a number of cases in this State it has been held that in civil actions the right of jury trial exists only in those cases where the right existed prior to the first constitution, and that the guaranty does not apply to special proceedings not then known or subsequently created or provided by statute. For examples: proceedings in the court of ordinary, *Davis* v. *Harper,* 54 *Ga.* 180; contested-election cases, *Freeman* v. *State,* 72 *Ga.* 812; proceedings against road defaulters, *Haney* v. *Commissioners,* 91 *Ga.* 773 (18 S. E. 28); *Blankenship* v. *State,* 40 *Ga.* 680; partition proceedings, *Rodgers* v. *Price,* 105 *Ga.* 67 (31 S. E. 126); condemnation proceedings, *Savannah &c. Ry. Co.* v. *Postal Telegraph Co.,* 112 *Ga.* 941 (38 S. E. 353); proceedings to validate bonds, *Lippitt* v. *Albany,* 131 *Ga.* 629 (63 S. E. 33). See *DeLamar* v. *Dollar,* 128 *Ga.* 57 (57 S. E. 85); *Pearson* v. *Wimbish,* 124 *Ga.* 701 (52 S. E. 751, 4 Ann. Cas. 501); *Flint River Steamboat Co.* v. *Foster,* 5 *Ga.* 194, 207 (48 Am. D. 248). In Peters v. Duluth, supra, it was held that Torrens laws have the general purpose to clear up and settle land titles, and are nothing more or less than an enlargement of the remedy to quiet title. Hence there is no constitutional right to a jury trial in Minnesota, under article 1, section 4, of the constitution of that State, which declares that "the right of trial by jury shall remain inviolate, and shall extend to all cases of law without regard to the amount in controversy." In the opinion it was said that "there was no such right [to trial by jury] upon the ancient bill to remove cloud and quiet title; and it has been held in this State that the constitutional guaranty does not apply thereto," citing Yanish v. Pioneer Co., 64 Minn. 175 (66 N. W. 198). No provision is made for a jury trial in the acts of California, Colorado, Minnesota, Ohio, Oregon, and

Washington. A jury trial is expressly provided for by the acts of Massachusetts, Mississippi, North Carolina, New York, and Georgia.. In Weeks v. Brooks, 205 Mass. 458 (92 N. E. 45), it was held that a jury trial where the title to real property is put in issue is a matter of right, and is not a privilege to be granted 'in the sound discretion of the court, in view of the constitutional provision that there shall be a right to a trial by jury "in all controversies concerning property." But the same court, in Meade v. Cutler, 194 Mass. 277 (80 N. E. 496), held that the provision of the land-registration act of 1904 relating to appeals from the land court, that "no matter shall be tried in the superior court except those specified in the appeal," is a reasonable regulation of the way in which the right to such appeals may be exercised, and is not an unconstitutional limitation of the right to trial by jury. In the opinion, by Morton, J., it is said that the natural effect of the provision "will or may be to eliminate immaterial matters, and thus to facilitate instead of impede the exercise of the right of trial by jury." By reference to the twentieth section, set out at length in the preceding division of this opinion, it will be seen that as soon as the examiner's report is filed it becomes a public record and open to the inspection of any interested person. "Any of the parties to the proceeding may, within twenty days after such report is filed, file exceptions to the conclusions of law or of fact or to the general findings of the examiner." Within the same time any party at interest may move to recommit the report for indefiniteness, lack of fullness, failure to separate and classify the findings of law and fact, or other like cause. The right of filing exceptions or of moving to recommit is not confined to those who have appeared before the examiner, but any party to the cause has the right. "The right to jury trial on exceptions of fact is broader under the act than it is in the general equity practice in this State." Powell's Land Registration, § —. To quote again from section 20: "If the petitioner, or any contestant of petitioner's right, shall. demand a trial by jury on any issue of fact arising upon exceptions to the examiner's report, the court shall cause the same to be referred to a jury." Under the Georgia act, the right of trial by jury exists as a matter of right and not as a matter of discretion, and the question

is whether the trial by jury provided by the act is a constitutional jury trial. It is true that the act provides that the issue or issues of fact shall be tried before the jury, in the event the jury trial is requested, upon the evidence reported by the examiner. But exceptions are made; and under the provisions of the act evidence other than that reported by the auditor may be submitted to the jury, in accordance with proceedings prevailing in this State as to auditors' reports in equity and exceptions thereto. Civil Code (1910), §§ 5144-45. Moreover, if the examiner has reported to the court findings of fact based on his personal examination, either party may introduce additional testimony as to the facts, provided that he shall make it appear under oath that he has not been fully heard and given full opportunity to present testimony on the same matter before the examiner. As pointed out in Peters v. Duluth, supra, the relief in ejectment is not coextensive with that which may be had under the land-registration act of this State. In ejectment title can never be settled as against the world. Conversely, relief may be had in ejectment which can not be had under the act, namely, possession of the premises and judgment for mesne profits, etc. The act is not a substitute for ejectment or for the statutory action for land. It is not an equitable action, but is a statutory proceeding, as held by this court in *Bird* v. *South Georgia Industrial Co.,* 150 *Ga.* 420 (104 S. E. 232). A proceeding to register the title may be brought by a person in possession against others not in possession, contrary to the rule in ejectment. As said by Mr. Justice Atkinson in *Lippitt* v. *Albany,* supra (referring to the statutory proceeding to validate bonds), " if it be sought to analogize such a proceeding to a common-law suit or to an equitable action, it would more nearly approximate the latter." It is, as the act itself declares, an action in rem, but the relief afforded is closely analogous to the equitable relief in an action to remove cloud and quiet title. The legislature may make a demand for a jury a condition to the enjoyment of the right. It may place restrictions upon the time and manner in which the demand may be made. *Sutton* v. *Gunn,* 86 *Ga.* 652 (12 S. E. 979) ; *Southern Ry. Co.* v. *Beach,* 117 *Ga.* 31 (43 S. E. 413). In *Flint River Steamboat Co.* v. *Foster,* supra, it was held: " The provision in the constitution

of Georgia, that 'trial by jury, as heretofore used, shall remain inviolate,' means that it shall not be taken away, in cases where it existed when that instrument was adopted in 1798; and not that there must be a jury in all cases. . . Trial by jury is a privilege which may be waived. And when the defendant has an opportunity to demand it, and omits to do so, he can not complain that it is denied. . . An act of the legislature, authorizing a judgment to be rendered without the intervention of a jury, is not, on that account, unconstitutional. . . Trial by jury may be clogged with onerous conditions; yet the act prescribing such terms will not be pronounced unconstitutional, unless it totally prostrates the right, or renders it wholly unavailing to the defendant, for his protection." The constitutional guaranty of jury trial does not limit the power of the legislature to prescribe rules of evidence or of procedure. The power of the court to appoint an auditor in a case at law not involving an accounting, and to restrict the hearing to the evidence taken before the auditor, is upheld in *Poullain* v. *Brown,* supra. It is true that in a law case exceptions to the auditor's report must be submitted to a jury, but the power of the court to refer the case to an auditor and to restrict the hearing to the evidence taken before the auditor, even in a case at law, can not be seriously questioned, in view of the decision above cited. See also *Central Trust Co.* v. *Thurman,* 94 *Ga.* 735, 736 (20 S. E. 141). In view of our statutes providing for the taking of interrogatories and of depositions, it can hardly be contended that the examination of the witnesses in the presence of the jury is a substantial and indispensable incident of trial by jury, within the constitutional guaranty. In view of the foregoing, we are of the opinion that the land-registration act of this State affords a constitutional jury trial.

3. Section 26 of the act provides as follows: "After the record shall have been perfected and settled, the judge of the superior court shall thereupon proceed to decide the cause; and if, upon consideration of such record, the title be found in the petitioner, the judge shall enter a decree to that effect, ascertaining all limitations, liens, encumbrances, etc., and declaring the land entitled to registration." If the judge finds that the petitioner is not entitled to the decree declaring the land en-

titled to registration, he shall enter judgment accordingly. If title be found to be in any person who has filed a cross-action praying for the registration of the title, the judge shall enter a decree declaring the land entitled to registration accordingly. If separate parcels are involved, separate decrees as to each parcel shall be rendered," etc. Section 27 of the act provides that "Every decree rendered as herein provided shall bind the land and bar all persons claiming title thereto or interest therein, quiet the title thereto, and shall be forever binding and conclusive upon and against all persons," including the State. In the proceeding to register the title, as already indicated, no judgment for money or land is entered against any party; no direct judgment for immediate recovery of the land is entered against any one. In view of what we have said in the next preceding division of the opinion, and of the nature of the decree authorized by the registration act, the act is not violative of the restriction contained in article 6, section 4, paragraph 7, of the constitution of this State (Civil Code (1910), § 6516 which declares that "the court shall render judgment without the verdict of a jury in all civil cases founded on unconditional contracts in writing, where an issuable defense is not filed under oath or affirmation." In this connection see *Isaac* v. *Tinley,* 58 *Ga.* 457 (2); *Palmer* v. *Simpson,* 69 *Ga.* 792 (3).

4. It is finally insisted that the act is violative of article 3, section 7, paragraph 8, of the constitution (Civil Code (1910), § 6437), because it refers to more than one subject-matter, and because it contains matter different from what is expressed in its title. The caption of the act is, "An act to provide for the assurance, registration, and transfer of land titles and interests therein, and for other purposes." In elaboration of the contention that the act refers to more than one subject-matter it is alleged in the petition for injunction that section 2 of the act in effect creates a new court by designating the superior court of each of the counties of the State as a land-registration court; that section 5 of the act creates a new and distinct action for the trial of cases respecting title to land, since it authorizes registration proceedings by one out of possession against an adverse claimant in possession; and section 85 of the act creates and defines a number of crimes and prescribes the punishment

therefor. In elaboration of the contention that the act contains matter different from what is expressed in the title thereof, it is alleged in the petition for injunction, that the entire act deals with a subject-matter of which no notice or intimation is given in the title; that section 5 thereof permits one claiming title to land and not in possession thereof to file a proceeding seeking the registration of such land, and thereby make such proceeding a substitute for the common-law action of ejectment or the statutory action of complaint for land; that section 40 of the act amends and in effect repeals the existing laws of the State with reference to the recordation of deeds, mortgages, and other writings relating to land; that sections 42 to 47, inclusive, amend and in effect repeal the existing laws of the State with reference to the title of the personal representative of a deceased person to the land of such deceased and the method by which title is transmitted upon the death of a person testate or intestate, in so far as lands registered under the terms of the act are concerned; that section 66 thereof amends and in effect repeals existing laws of the State with reference to title by prescription and adverse possession; that section 2 creates a land-registration court; that section 85 creates and defines a number of felonies and prescribes the punishment therefor, and that, in short, the effect of the act as a whole is to create two systems of land tenure in Georgia, one governed by the laws of the State existing prior to the adoption of the act and one by the act. There is no elaboration of the point in the brief of counsel for defendants in error, but we do not understand that the point ·is abandoned. It follows from what we have already said that many, if not all, the contentions stated are untenable; and we are of the opinion that the act does not refer to more than one subject-matter, and ·that it does not contain matter different from what is expressed in its title, in any of the particulars pointed out. In the brief of counsel for the defendant in error the case of *Morris* v. *State,* 117 *Ga.* 1 (43 S. E. 368), where it was held that the title of an act " to regulate dentistry and the practice thereof, . . and for other purposes," was sufficient to authorize the· legislature to prescribe penalties for violations of its provisions, is referred to and discussed. It is said that this ruling was made with

reference to a police regulation. As we think, the title of the act here involved, viz., " an act to provide for the assurance, registration, and transfer of land titles and interests therein, and for other purposes," is broad enough to authorize the legislature to declare acts in violation of its provisions criminal and to prescribe penalties for violations of its provisions. But whether or not section 85 of the act (providing penalties for the violations of the provisions of the act) contains different subject-matter from that included in the general body of the act and beyond the purview of the caption, the act as a whole is not unconstitutional on that ground, because that section is not so essential a part of the general purpose of the act that its elimination would destroy the legislative scheme. and invalidate the act in its entirety.

Having held the land-registration act valid as against the objections raised in this case, it follows, in view of the stipulations of counsel and the recitals in the bill of exceptions, that the court erred in granting the injunction.

*Judgment reversed. All the Justices concur, except Atkinson, J., disqualified.*